D. E. GRISWOLD, *Plaintiff in Error*, v. THE STATE OF FLORIDA, *Defendant in Error*.

Opinion filed April 23, 1919.

1. A person held in custody under a warrant issued on an indictment which does not wholly fail to charge an offense is not entitled to his discharge from custody, although the indictment may contain defects which render it amenable to objections which could have been presented by a motion to amend or by demurrer.

2. Section 3319 of the General Statutes of Florida, 1906, denouncing the offense of obtaining property by false pretense is not concerned with the motive with which the victim parts with his money or property, but the means which the offender uses to obtain it.

3 An indictment which charges that the defendant by his own activities and those of his agents won the confidence of another in the former's representation that he had established

by means of telegraph wires and a telegraph instrument communication with a race track and was receiving information as to the result of the races and by such means induced the other to wage money upon the races, and such representations were false in that there was no such telegraphic communications with such race track, and that defendant exhibited packages of what he falsely said was money which he offered to bet with the other on such races and by such means consisting of false tokens and false words used in connection therewith, induced the other to part with his money upon a wager that a certain horse would win in the race, which money the defendant received and retained pursuant to his original intention and design by announcing that the telegraphic information received showed that the particular horse had lost the race, charges the offense of obtaining money by false pretenses.

4. One who is deprived of his liberty upon a criminal charge and by an arbitrary order of the court is denied a speedy trial and his cause is continued may obtain his discharge upon *habeas corpus* proceedings.

5. In this State one charged with a criminal offense is entitled under the Constitution to a speedy and public trial, but the presumption does not obtain that a continuance of the case by the Court upon application of the State over the defendant's objection is a denial of that right.

6 One who is in custody charged with a criminal offense and seeks his discharge upon *habeas corpus* upon the ground that he has been denied a speedy trial because the court over his objection continued the case upon insufficient grounds, must make such error affirmatively to appear.

7 When a motion by the State for a continuance of a criminal case is granted over the defendant's objection, and such order of continuance is attacked in a *habeas corpus* proceeding for the discharge of the defendant upon the ground that he is denied a speedy trial, the motion for continuance

and affidavits in support thereof should be evidenced to this court by bill of exceptions.

8.  The granting of a motion for continuance in a criminal case over the defendant's objection is no ground for the reversal of a judgment of conviction when the order of continuance was not attacked at the time in an appropriate manner and the record does not disclose that the defendant's rights were jeopardized at the trial by the continuance.

9   If an indictment in one count charges two distinct or separate offenses, the count is demurrable. If the indictment contains two counts which are inconsistent or charge inconsistent offenses, a motion to elect upon which count the defendant shall be tried is appropriate.

10. An objection to the admission of evidence because of remoteness of the fact sought to be proved is without merit if its admission has any logical tendency to assist the court in determining the contested issues.

11. A witness may testify whether a contract existed between certain parties although he may not be permitted to testify as to the terms of the contract if it had any existence in fact and was in writing.

12. The admission of evidence which may be irrelevant because the fact sought to be proved is remote does not *per se* render such admissible reversible error; it must be shown that it was misleading or confusing.

13. Objections to evidence for irrelevancy and immateriality are too general to contain merit and will not be considered if the evidence was admissible for any purpose, or was harmless.

14. Evidence examined and found sufficient to support the verdict.

A Writ of Error to the Circuit Court for St. Lucie County; E. B. Donnell, Judge.

Judgment affirmed.

*C. D. Abbott, S. C. Kearley* and *Otis R. Parker*, for Plaintiff in Error;

*Van C. Swearingen*, Attorney General, and *C. O. Andrews*, Assistant, for the State.

ELLIS, J.—The plaintiff in error was convicted in the Circuit Court for St. Lucie County of the crime of obtaining money by false pretences and seeks to have the judgment reversed.

The indictment was presented at the Spring Term, 1918, and upon motion of the State the case was continued for the term upon the ground that a material witness for the State was absent.

Griswold then applied by petition to the court for a writ of *habeas corpus* and asked for his discharge from the custody of the sheriff upon the ground that the indictment "wholly fails to allege or charge any offense known to or against any laws of the State of Florida," and, second, that the granting of the State's motion for a continuance over the petitioner's objection, amounted to a denial to the petitioner of the constitutional right to a speedy trial.

The petition and return of the sheriff each had attached to it a copy of the indictment. The case was submitted on brief, and the court entered an order quashing the writ of *habeas corpus* and remanding the petitioner.

There were involved in the case on *habcas corpus* two questiosn: First, whether the indictment wholly failed to charge the defendant with any offense against the laws of Florida, and, second, whether the continuance of the case against the defendant at the Spring Term of the court was a denial of his right under the constitution to a "speedy and public trial." Both of these questions were decided against the petitioner.

As to the first question the indictment in substance charged the defendant Griswold with operating a bogus information booth concerning the result of certain pretended horse races and by that means obtained money from one David P. Valley, who placed a large sum of money with the defendant on a wager as to certain horse races, the results of which the defendant pretended were communicated to him by telegraph at the place or booth named in the indictment; that the money of Valley was retained by the defendant, who pretended that Valley had lost the wager on the race, when in fact the defendant had no telegraphic communication from any such horse races and received no information concerning them, and there were no telegraphic connections between the defendant's place and any such race track or place where horse races were occurring.

In remanding the petitioner this court held that the indictment did not wholly fail to charge the defendant with an offense against the laws of Florida. If it did not wholly fail to charge an offense, then the petitioner was not entitled to be discharged from custody upon that ground, although the indictment may have been defectively drawn and amenable to objections that could have been presented by motions to amend or demurrer. Ex Parte Davidson, 76 Fla. 272, 79 South. Rep. 727; Crooke v. Van

Pelt, 76 Fla. 20, 79 South. Rep. 166; In re Roberson, 73 Fla. 1068, 75 South. Rep. 604; Ex Parte Prince, 27 Fla. 196, 9 South. Rep. 659; Ex Parte Bailey, 39 Fla. 734, 23 South. Rep. 552; Mooneyham v. Bowles, 72 Fla. 259, 72 South. Rep. 931; Russell v. State, 71 Fla. 236, 31 South. Rep. 27.

The indictment in this case was very lengthy, perhaps unnecessarily so. It contained a great deal of matter that could properly be classed as inducement. It set out much of the evidence upon which the State relied to sustain the charge. It set out in detail the transactions from the meeting of Valley and Gray and Bonnell to the actual placing of the money by Valley into the hands of the defendant and his retention of the same upon the pretense that he had received a communication from the race track that the horse upon which Valley had wagered the money had lost the race. Although the indictment may be subject to the criticism of pleading evidence rather than the ultimate facts, it did not for that reason fail to charge an offense, nor was it for that reason subject to a motion to quash. It is clear from the allegations of the indictment that the false pretenses consisted in the use of a telegraph instrument and packages of paper cut in the shape of bank notes or treasury notes and arranged in packages with a treasury note at the top and bottom of each package so as to resemble packages of money, and falsely pretending and representing that the telegraph instrument was connected by wires with some point from which the defendant received over the said wires and by means of the instrument information as to the result of certain horse races, and that the paper cut in the shape of bank notes or treasury notes and arranged in packages

as stated, was money of the United States of equal value to that wagered by Valley.

The statute of this State dealing with the offense of obtaining property under false pretenses, Section 3319, General Statutes, 1906, Florida Compiled laws, 1914, is not concerned with the motive with which the victim parts with his property, but the means which the other uses to obtain it. The indictment shows by its allegations that the defendant by a course of conduct led Valley to repose confidence in him, and that, with the view of taking advantage of the latter's confidence and thus obtain his money, and that by the use of the bogus telegraph and false packages of money and false words and conduct in connection therewith, the defendant did take advantage of Valley's confidence and by that means obtained the latter's money. See 11 R. C. L. 839; People v. Turpin, 233 Ill. 452, 84 N. E. Rep. 679, 17 L. R. A. (N. S.) 276, and note upon the subject of the illegal intent of the prosecutor as affecting the guilt of defendant charged with obtaining money by false pretense.

The allegations of the indictment were sufficiently full to charge the offense of obtaining money and a check by false pretenses, the method adopted being a kind of confidence game. The defendant by his own activities and those of agents, so it is alleged, won the confidence of the prosecutor, Valley, in the representations of the defendant that he had established by means of telegraph wires and a telegraph instrument communication with a race track and was receiving information as to the results of the races. The defendant thus induced Valley to wager money upon the races, agreeing to bet with him an equal sum upon each race. To give color to this statement, and to show his ability as well as willingness to wager the

money the defendant exhibits packages of paper so cut and arranged to appear as genuine bills or treasury notes. By these means, so it is alleged, the defendant induced Valley to place his money with the defendant upon a horse race. After the bet was placed, the deception and pretense was continued to the point of announcing that the telegraphic information was that the horse upon which Valley had bet his money had lost, and the defendant, pursuent to the scheme and in accordance with his original intention, purpose and design, kept the money.

There was no error in overruling the motion to quash the indictment.

The next question presented in the *habeas corpus* proceedings and involved in the assignments of error in this case is whether the defendant was entitled to his liberty at the Spring Term, 1918, of the Circuit Court when the court, over the defendant's objection, granted the State's motion to continue the case until the next regular term. The effect of the order was to delay the trial of the defendant for about six months.

The eleventh section of the Declaration of Rights in the Constitution of Florida of 1885, provides that in all criminal prosecutions the accused shall have the right to a speedy and public trial by an impartial jury in the county where the crime was committed. It is universally conceded that the above and similar provisions in the constitutions of other States involve fundametnal rights and is of general interest. By such provisions the State has covenanted with each inhabitant that no one's life or liberty shall be taken upon a mere charge of crime, and that no one shall be subjected to imprisonment beyond what shall be necessary to the protection of society. To

cause one to be imprisoned beyond the necessities of the case is opressive and tyrannous, said the Supreme Court of California in Begerow's Case, 133 Cal. 349, 65 Pac. Rep. 828. That case was an application for a discharge from custody upon *habeas corpus* by the petitioner who was held upon two separate charges on information for murder. By decision of the majority of the court the defendant was deemed entitled to his discharge. A statute of that State provided that the court, unless good cause to the contrary be shown, must order the prosecution to be dismissed, if a defendant whose trial has not been postponed upon his application, is not brought to trial within sixty days after the finding of the indictment or filing of the information. The majority opinion, however, in our view, rests upon the principle that every one detained in custody upon the authority of the State charged with crime is entitled to a speedy trial, and if this right is denied to him without just cause he is unlawfully detained because such detention is oppressive and tyrannous and consequently in violation of the principles of liberty upon which the government rests. The State, said the learned judge who wrote the opinion, in a criminal case is not only a party litigant and as such is bound to use diligence to prepare for trial on pain of having its case dismissed, but it holds the defendant in custody upon the express guaranty for a speedy trial, and that it will not continue to hold him save under a legal verdict declaring him guilty—that is, without trial. See, also, In re Garvey, 7 Colo. 502, 4 Pac. Rep. 758; McGuire v. Wallace, 109 Ind. 284, 10 N. E. Rep. 111; In re McMicken, 39 Kan. 406, 18 Pac. Rep. 473; United States v. Fox, 3 Mont. 512; Ex Parte Ford, 160 Cal. 334, 116 Pac. Rep. 757, Ann. Cas. 1912D, 1267.

We do not follow the view expressed by the courts of last resort in some of the States, Illinois, Ohio and Missouri among others, that the question can not be raised in a *habeas corpus* proceeding in any court. "The writ of *habeas corpus* is regarded as the greatest remedy known to the law whereby one unlawfully restrained of his liberty can secure his release." "The essential object and purpose of the writ is to inquire into all manner of involuntary restrain as distinguished from voluntary restraint and relieve a person therefrom if such restrain is illegal." Justice LORIGAN in the case of Ex parte Ford, *supra*. We think this is the correct view of the law, and hold that the remedy by *habeaus corpus* is the correct one in cases where one is deprived of his liberty upon a charge of crime and is denied a speedy trial by the arbitrary order of a court which causes him to be detained to await the convenience of prosecuting officers.

We have no statute in this State like that of California which is practically a legislative construction of what shall constitute a "speedy trial," but there are statutes regulating continuances in criminal cases. They are as follows:

"After any person shall be indicted for felony or for a misdemanor, or after an information shall be filed against him, if he be not already in custody, a capias shall issue for his arrest and shall be directed to all and singular the sheriffs of the State of Florida, and when the grand jury shall have presented to the circuit court a bill of indictment for felony, and the accused be in custody, the court shall cause him to be arraigned and tried at the same term, unless good cause be shown for a continuance, and shall allow him counsel to assist him in his trial if he desires it."

"Whenever the prosecution shall desire the continuance of any criminal case pending in any of the courts of this State; for the term of the court, the judge shall require of the State Attorney, prosecuting attorney or other prosecuting officer, the same showing, but not under oath, for such continuance as now is or may hereafter be required by law, of a defendant in a criminal case when asking a continuance thereof; Provided, however, That nothing in this section shall be construed as a limitation upon the reasonable discretion of the courts, in the continuance of cases." Secs. 3969, 3976, Gen. Stats. 1906, Florida Compiled Laws, 1914.

In the case of Ex parte Warris, 28 Fla. 371, 9 South. Rep. 718, this court held that in the absence of any showing that the continuance was granted without good cause it cannot be held that one continuance amounts to a denial of a speedy trial. In that case the court assumed the rule to apply that a presumption existed in favor of the court's action, that the continuance was granted upon good cause being shown. The application for continuance was made by the State. The case was followed in Ex parte Vickery, 51 Fla. 141, 40 South. Rep. 77. The opinion does not state the facts or circumstances under which the continuance which was obtained upon motion of the State was granted, but it may be regarded as authority for the rule that in the absence of a showing that no good cause existed or was shown for the continuance, the contrary will not be presumed, and that one continuance granted upon the application of the State will not be deemed *per se* to be a denial of a speedy trial. The doctrine seems to obtain in many other jurisdictions that when the right of the defendant to a speedy trial is involved the presumption obtains that a continuance

granted upon application of the State is presumed to be a denial of that right. That is to say that as the right sprang into existence from the oppression and tyranny practiced upon men accused of crime in other days and was secured as a matter of protection against the State's power to detain a person in custody without a trial, all presumptions are against the legality of an order which denies to the accused a speedy trial. The contrary rule, however, was announced in the case of Warris, *supra,* and we may consider it to be settled in this State.

The question in the *habeas corpus* proceedings in so far as it attacked the indictment rested upon a matter of record. The indictment was duly presented and filed, a certified copy of it was presented with the petition, but the question affecting the defendant's right to be discharged, that is to say, the legality of his detention rested upon a matter *inpais,* namely the sufficiency of the showing made by the State upon its application for a continuance.

Now, assuming that this court would discharge a petitioner upon *habeas corpus* on the ground that the court had erred in ordering the petitioner to remain in custody on a motion for a continuance by the State which motion was not supported by sufficient grounds to justify such order and thus denied the petitioner's right to a speedy trial, the court's action and the basis for it should be evidenced to this court by some authentic document, not merely a recital in a petition or an admission in a return. The fact should be evidenced to this court by something of record in the proceedings. A bill of exceptions duly made up and signed by the judge and made a part of the record, would be a sufficiently reliable and trustworthy means of bringing the matter to this court by making it

a part of the petition by attaching it as an exhibit there-
to just as the indictment was exhibited to the court in
this case. The court would then have before it the lower
court's order and the evidence upon which it was made,
and it could with due propriety determine whether the
court had abused its discretion and caused the defendant
to remain in custody in violation of his right to a speedy
trial. This court having said in the Warris case, *supra*,
that the order of continuance being presumed to have
been properly made, that is to say, in accordance with
law, the petition should attack the order which is a mat-
ter of record, by evidence of equal value, namely, by some
matter of record. This the petitioner failed to do, so the
court remanded the petitioner.

The question of the propriety of the court's order is
again raised upon this writ of error. The motion and
the grounds upon which it rested are duly evidenced by a
bill of exceptions and we are of the opinion that the
grounds of the motion were insufficient to justify the
order of continuance. The showing made failed to come
up to the standard required in such cases in several par-
ticulars pointed out in counsel's brief. See Moore v.
State, 59 Fla. 23, 52 South. Rep. 971; Pastorius v. Whid-
by, 76 Fla. 571, 80 South. Rep. 513. But as this showing
was not made to this court upon the hearing in the
*habeas corpus case*, we were left to the presumption that
the order was correctly made. The petition contained a
reference to the motion and stated that a copy of it was
attached and marked Exhibit "C" and made a part of
the petition. If by such means a judicial order could be
successfully attacked, which we doubt, an examination of
the Exhibit shows that it was not a copy of the motion,
but a copy of the statement filed in support of it. To

that document was attached a certificate of the clerk that it was a correct copy of the "showing by the State of Flor-- ida for continuance as filed in the public records in this office." This informal method of attacking a judicial order ought not to be effective, for anything that appears of record to the contrary the court may have acted upon the petitioner's acquiescence in the continuance. At any rate the showing made by the State in the form of a written statement or oral statement from the bar was a matter *in pais* and should have been made a matter of record by bill of exceptions duly filed, or the reasons for the continuance embodied in the court's order if that order was to be attacked as an arbitrary ruling having the effect of depriving the petitioner of the constitutional right to a speedy trial.

The question now presented upon the writ of error to the judgment of conviction is: Should the judgment be reversed because of the court's error in granting the continuance? The failure to properly attack the order of continuance must be treated as a waiver of the right to a trial at the term of court at which the indictment was presented. The right being waived, no complaint can now be made upon the insufficiency of the showing made by the State for the continuance. Besides the record discloses nothing which supports the contention that the plaintiff in error was in anywise prejudiced, or that his rights were jeapordized at the trial by the continuance. See Hopkins v. State, 52 Fla. 39, 42 South. Rep. 52.

If it is assumed, to which we do not now commit ourselves, that the right of the defendant to be discharged from custody in a case when he is denied a speedy trial, operates to dismiss the prosecution, he should at his trial have moved the court for such dismissal and based upon

the denial of the motion the ground for reversal of the judgment of conviction. Such seems to be the practice in many jurisdictions. See Patterson v. State, 49 N. J. L. 326, 8 Atl. Rep. 305; In re McMicken, *supra;* McGuire v. Wallace, *supra;* Ex parte McGehan, 22 Ohio St. 442.

A motion was made by the defendant below to require the State to elect the offense upon which the defendant should be tried. The motion was based upon the view that the indictment which contained one count charged both conspiracy and obtaining money by false pretenses. The indictment is not subject to that criticism· It charges in one count the offense of obtaining money and a check by false pretenses and sets out with particularity the means and manner by which the alleged crime was committed. If the count contained charges of two distinct and separate offenses it would have been demurrable for duplicity. If it had contained two inconsistent counts, or in two counts charged inconsistent offenses, it would have been subject to a motion to elect upon which count the defendant should be tried. See McGahagin v. State, 17 Fla. 665; Irvin v. State, 52 Fla. 51, 41 South. Rep. 785; Johnson v. State, 51 Fla. 44, 40 South. Rep. 678; Eggart v· State, 40 Fla. 527, 25 South. Rep. 144.

The fourth, fifth, sixth and seventh assignments of error relate to the admission of evidence of certain scraps of pasteboard representing tickets said to be used at horse races, pictures of horses, packages of newspapers cut in slips about "2 x 5" and bound together in packages by money wrappers labeled with figures expressing dollars. Some of the scraps of paper were found in a room in a hotel occupied by the defendant about a year after the alleged offense, others were found in the yard surrounding the house alleged to have been rented by the defend-

ant and in which the offense was said to have been committed. It is argued that these papers, pictures, and packages were irrelevant and immaterial in the issue; that the finding of others in the hotel room was a circumstance too remote from the alleged transaction to have any bearing upon the case. These objections to the admissibility of the evidence are without merit.    They relate to the relevancy of the evidence. Logic is the test of relevancy, and though a remote fact which is logically relevant may not be legally relevant because of its remoteness, yet the propriety of its admission being addressed to the discretion of the court, its admission is not error if it has any tendency whatever to assist the court in determining which party speaks the truth as to the contested issues.    See 11 Ency. Evidence, 174; Prior v. Oglesby, 50 Fla. 248, 39 South. Rep. 593.

The eighth, ninth, tenth and eleventh assignments of error question the admissibility of certain testimony of the witnesses, A. E. Lang and P. C. Eldred.    Lang was district manager of the Western Union Telegraph Company and testified that he had access to and knowledge of any contracts with anyone having a private wire; that the company had no contract with the defendant, and had none for two years past "outside of Feldsmere" whereby they were authorized to operate a private wire in St. Lucie County.    On cross-examination he said all the contracts were in New York.    The defendant then moved to strike the testimony of the witness that related to private wires in St. Lucie County by the company, on the ground that the contracts were the best evidence and that as the contracts were not executed by the witness he had no diect knowledege of them.    The witness said that he knew there was no contract with the defendant.    He did not

undertake to testify as to the contents of any written documents. He was competent to testify as to the existence of any contract with the defendant, although his testimony may not have been competent as to the terms of any such agreement had it any existence in fact.

P. C. Eldred testified that during the year he went into the defendant's room at the hotel in Ft. Pierce; that the sheriff in the witness' presence found some "packages of paper" which the witness identified; that he also saw some "deposit slips" in the defendant's name. The defendant objected to this evidence and moved to strike it· It is impossible to say that the "packages of paper" or "deposit slips" found in the defendant's room had any relevancy or not, from the record, as they are not before us. But if they were relevant to any issue between the parties we are furnished with no reason why they were not admissible except that counsel say they were found at a time too remote from the date of the alleged offense to have any bearing on the case. The mere fact of evidence being irrelevant because remote does not render its admission reversible error in the absence of any showing that the jury were mislead or confused by it. 11 Ency. Evidence, 211.

The assignments of error from twelve to nineteen inclusive which are not abandoned present similar questions upon the admissibility of evidence. We have examined each of these assignments and find no error. It would be useless to discuss them as no new questions are presented. We have often said that objections to the introduction of evidence for irrelevancy and immateriality are too general to contain much merit, and will not be considered if the evidence was admissible for any purpose, or harmless. See Atlantic Coast Line R. Co. v. Crosby, 53

Fla. 400, 43 South. Rep. 318; Hoodless v. Jernigan, 46 Fla. 213, 35 South. Rep. 656; Pittman v. State, 51 Fla. 94, 41 South. Rep. 385; Williams v. State, 53 Fla. 89, 43 South. Rep. 428; Putnal v. State, 56 Fla. 86, 47 South. Rep. 864; Danson v. State, 62 Fla. 29, 56 South. Rep. 677.

We have expressed the view that the indictment was sufficient in its allegations to charge the offense of obtaining money by false pretenses, so the twentieth assignment of error must fail.

The twenty-first assignment attacks the verdict as being unsustained by the evidence. It is contended that as the indictment alleged that Valley was informed that the defendant was taking bets on "pretended" horse races, he could not have been deceived by the defendant's pretenses. That criticism is undoubtedly true, but we find no support for it in the evidence, and the allegation of the indictment does not quite bear that interpretation· The allegation is that Valley was informed that the defendant "was by means of a telegraph wire and telegraph instrument receiving in said house news or information concerning the result of certain pretended horse races being run or conducted, they pretended at some place beyond the limits of said county," etc. This allegation is somewhat involved and might have been successfully attacked by demurrer, but upon a motion for a new trial or motion in arrest of judgment we think the defect would be considered waived. The allegation being equivalent to the statement that the defendant was pretending to receive by telegraph news of horse races which he petended were run or conductd in another place.

We think the evidence was sufficient to sustain the verdict. Finding no error in the record, the judgment is affirmed.

BROWNE, C. J., AND TAYLOR, WHITFIELD AND WEST, J. J., concur.