No. 24,152.

THE STATE OF KANSAS, *Appellee and Appellant*, v. FRANK AVERY, *Appellant and Appellee.*

SYLLABUS BY THE COURT.

1. CRIMINAL LAW—*Worthless-check Act (Laws of 1915, Ch. 92) Interpreted.* The offense created by the worthless-check act (Laws 1915, ch. 92), making it unlawful to issue a check on a bank, knowing at the time there are no funds on deposit to meet the check on presentation, and providing punishment for any one who willfully violates the act, is not related to the false-token, bogus-check, and false-pretense group of crimes, the purpose of the act being to discourage overdrafts and resulting bad banking, to stop the practice of "check-kiting," and generally to avert the mischief to trade, commerce and banking which the circulation of worthless checks inflicts.

2. SAME—*Issuing Worthless Checks—Elements of Crime.* Intent to defraud and accomplishment of fraud are not elements of the offense, and are not essential to validity of the act.

3. SAME—*No Imprisonment for Debt—No Compounding Felony.* The statute does not sanction imprisonment for debt nor compounding of felony.

4. SAME—*Telling Payee No Funds Does Not Excuse.* All the elements of the offense being present, the maker of the check is not relieved from punishment by the fact he told the payee, when the check was issued, he had no funds in the bank to meet it.

5. SAME—*Postdated Checks.* The act applies to postdated checks.

Appeal from Pawnee district court; ROSCOE H. WILSON, judge. Opinion filed June 10, 1922. Affirmed in part and reversed in part.

The State v. Avery.

*Richard J. Hopkins,* attorney-general, *H. S. Rogers,* county attorney, and *Richard H. Browne,* deputy county attorney, for the appellee and appellant.

*G. Polk Cline,* and *Nellie Cline,* both of Larned, for the appellant and appellee.

The opinion of the court was delivered by

BURCH, J.: The defendant was convicted of violating the statute prohibiting a person from drawing a check on a bank, knowing he has no funds on deposit to meet the check when presented, and appeals. Two counts of the information were quashed, and the state also appeals.

Section 1 of the statute reads as follows:

"It shall be unlawful for any person, corporation, or partnership, to draw, make, utter, issue or deliver to another any check or draft on any bank or depository for the payment of money or its equivalent, knowing, at the time of the making, drawing, uttering or delivery of any such check or draft as aforesaid that he has no funds on deposit in or credits with such bank or depository with which to pay such check or draft upon presentation." (Laws 1915, ch. 92, § 1, Gen. Stat. 1915, § 3471.)

Section 2, as amended in 1917, provides a penalty for "willfully violating" any of the provisions of section 1. (Laws 1917, ch. 170.)

Section 3 reads as follows:

"That in any case where a prosecution is begun under this act, the defendant shall have a right, upon application made for that purpose before trial, to have said action abated by showing to the court or judge that he has had an account in said bank upon which said check or draft was drawn, thirty days next prior to the time said check or draft was delivered and that said check or draft was drawn upon said bank without intent to defraud the party receiving the same, and if the court shall so find, said action shall be abated and the defendant shall be discharged upon paying into court the amount of such check and the costs in said case." (Laws 1915, ch. 92, § 3, Gen. Stat. 1915, §3473.)

Another section defines the term credits; another makes the statute inapplicable in case the check be paid; and another distinguishes the statute from the false-token statute and other existing laws. At the same session the legislature passed an act which provides punishment for obtaining money or other valuable thing by cheats, frauds, and bogus checks. (Laws 1915, ch. 203, § 1, Gen. Stat. 1915, § 3470.)

The first count of the information was based on a check to the Dodge City Wholesale Grocery Company, for $133.44, dated August 9, 1920. The second count was based on a check to the Dodge City

Wholesale Grocery Company, for $96.57, dated September 7, 1920, and the count contained an allegation that, when the check was delivered to the payee, the defendant told the payee he had no funds on deposit to meet it. The third count was based on a check to the McCord-Kistler Mercantile Company, for $129.04, dated November 22, 1920, but drawn and delivered to the payee on November 20, 1920. All the checks were drawn on the Farmers' State Bank of Larned.

The defendant filed a motion to quash the information, on the ground it did not state facts sufficient to constitute a public offense. The motion was overruled as to the first count, and sustained as to the second and third counts. The defendant then pleaded guilty to the first count, but moved the court to arrest judgment, on the ground the first count did not state facts sufficient to constitute a public offense.

The defendant contends the criterion of guilt in criminal law is wrongful intent, and the statute does not require criminal intent in order to constitute the felony denounced. The statement is entirely too broad. The worthless check must be willfully drawn, knowing at the time there are no funds on deposit to meet it. Beyond that, the legislature may, for protection of the public interest, require persons to act at their peril, and may punish the doing of a forbidden act without regard to the knowledge, intention, motive, or moral turpitude of the doer. There is no constitutional objection to such legislation, the necessity for which the legislature is authorized to determine. (*The State v. Brown,* 38 Kan. 390, 393, 16 Pac. 259; 16 C. J. 76-78.) Whether or not the legislature has enacted such a statute is a matter of interpretation.

The defendant contends the offense of giving a worthless check is related to the false-token and false-pretense group of crimes, and consequently, in order to constitute a crime, the check must be given with intent to defraud, and fraud must be accomplished by procuring money or other valuable thing. That the legislature was not adding to the list of punishable deceits and frauds, is manifest from the interpretative section of the statute, and from the fact the legislature at the same session passed the bogus-check act. The purpose of the statute was to discourage overdrafts and resulting bad banking (*Saylors v. Bank,* 99 Kan. 515, 518, 163 Pac. 454), to stop the practice of "check-kiting," and generally to avert the mischief to trade, commerce and banking which the circulation of

worthless checks inflicts. Although the statute tends to suppress fraud committed by the worthless-check method, the evils referred to are all quite distinct from those consequent on fraud, and the statute is to be regarded as creating a new and distinct offense.

In Kentucky, the worthless-check act makes the giving of such a check, with intent to defraud, a crime. In the case of *Commonwealth v. McCall*, 186 Ky. 301, the court distinguished the worthless-check act from the statute relating to obtaining money or property by false pretense or false token, as follows:

"This section creates a new and distinct offense, the commission of which is accomplished by giving a check with the intent to defraud on a bank in which the maker knows he has not sufficient funds to pay the check, and it is not essential to constitute .an offense under this section that any false representation, statement or pretense should be made by the maker of the check concerning the state of his account in the bank, on which the check is given, or in connection with the transaction. No questions need be asked by the person to whom the check is given or information volunteered by the person giving the check. The mere giving of such a check with the intent to defraud will constitute the offense, and the intent to defraud will be present whenever money, property or other thing of value is parted with by the person to whom the check is given." (p. 305.)

In the case of *The State v. Miller*, 74 Kan. 667, 87 Pac. 723, cited by the defendant, the court concluded, from the title of the act and the language of the section under consideration, that the statute forbidding sale of mortgaged property without written consent of the mortgagee contemplated intent to defraud. In the recent case of *State v. Taylor*, (S. Dak.) 183 N. W. 998 (decision not yet officially reported), the legislative intention was indicated by a change of definition. In that case, the substance of the charge was that the defendant willfully, knowingly, unlawfully and feloniously obtained money, by giving a check on a bank which he knew did not exist. The supreme court of South Dakota held the words willfully, knowingly, unlawfully, and feloniously, were equivalent in meaning to "designedly," and said:

"The crime of false pretenses, as defined by section 645 of the Revised Penal Code, 1903, was changed by section 4249, Code of 1919, by omission of the words 'with intent to cheat and defraud.' The new section, so far as material here, reads:

" 'Every person who designedly, by color or aid of any false token or writing, . . . obtains from any person any money or property, is punishable,' etc.

"Under this section a specific allegation that the act was done 'with intent to cheat or defraud' is not required, and such intent is not a necessary ele-

ment of the crime defined by this statute. The statute requires only that the act shall have been done 'designedly.'" (p. 999.)

In this instance it seems clear that fraudulent intent was purposely omitted from the enumeration of elements of the crime.

The defendant contends the statute is in conflict with section 16 of the bill of rights, which forbids imprisonment for debt except in case of fraud. It is said the check was given to pay an acknowledged debt, long past due, and neither debtor nor creditor made or lost anything, but the debtor must be imprisoned because the debt was not discharged by the check. The information does not disclose the consideration for the check. It may be conceded, however, the statute applies to a transaction of the character described. Nevertheless, the statute does not impose imprisonment for debt. This subject was considered by the supreme court of Georgia, in the case of *Hollis v. State*, 108 S. E. 783 (decision not yet officially reported). The constitution of the state of Georgia declares "there shall be no imprisonment for debt." The worthless-check act of 1919 resembles the statute of this state, except that the check must be drawn with intent to defraud. The court said the drawer of the check is not imprisoned for debt, but for fraud, and cited the case of *Smith v. The State*, 141 Ga. 482. In the cited case, the court had under consideration the act designed to punish fraudulent practices in obtaining board, lodging and other accommodation at hotels, inns, boarding houses, and eating houses, and held imprisonment was not imposed for debt, but for the forbidden practices. Under the statute of this state, the offense does not consist in nonpayment of debt, but in resorting to a practice which the legislature regarded as demoralizing to business.

The second count of the information was not vitiated by the allegation that, when the check was given, the defendant told the payee he had no funds in the bank to meet it. The payee was not deceived, but deception of the payee of a worthless check is not the primary evil which the statute was designed to frustrate.

The third count of the information was based on a postdated check. The specific evils which the statute was designed to remedy follow from the giving of a worthless postdated check, and no reason is apparent for excepting such a check from operation of the statute if, when it is given, the drawer knows it is worthless for want of funds.

In the case of *Neidlinger v. The State*, 17 Ga. App. 811, the court

The State v. Avery.

had under consideration the worthless-check act of 1914 of the state of Georgia, which reads as follows:

"Any person who shall draw and utter any check, draft, or order for present consideration upon a bank, person, firm or corporation with which such drawer has not at the time sufficient funds to meet such check, draft, or order, and shall thereby obtain from another money or other thing of value, or induce such person to postpone any remedy he may have against such drawer, shall be guilty of a misdemeanor, and upon conviction shall be punished as prescribed in section 1065 of this code: *Provided,* That if such drawer shall deposit with such drawee of such paper, within thirty days thereafter, funds sufficient to meet such check, draft, or order, together with interest which may have accrued, there shall be no prosecution under the provisions of this act." (p. 812.)

The court held the act was not intended to cover postdated checks. The court reasoned as follows: A fraudulent intent must exist and be operative before the giving of a worthless check could constitute a crime; the statute penalized conduct similar to forms of cheating and swindling, and consequently the court should assume the elements of the offense were similar to those of cheating and swindling; otherwise, the statute would simply afford means of collecting debts through the instrumentality of the criminal law; one who knowingly takes a postdated check for an article of value, relies, not on funds in bank to meet the check, but on ability of the drawer to have funds on deposit when the check is presented; there is an implication that the drawer does not have present funds on which to draw; and the payee is apprised that the paper constitutes no more than a promise to pay in the future. The major premise of this argument is unsound and, if the statute were passed as the result of activities of bankers and business men's associations, as in this and other states, the court failed to view the statute from their standpoint. The offense is not committed against the payee of the check, but consists in the public nuisance resulting from the practice of putting worthless checks in circulation.

In 1919, the legislature of Georgia passed a new worthless-check act which, by express declaration, made intent to defraud an element of the offense. In the case of *Strickland v. State,* (Ga.) 110 S. E. 39, the maker of the check told the payee he did not have money to spare, and wished to date the check ahead. In holding the maker not subject to prosecution, the court of appeals followed the Neidlinger case.

The defendant contends the statute is bad because it sanctions compounding of felony. Use of the expression "compounding of felony" is fallacious in this connection. The legislature could affix such punishment, mild or severe, as it desired, and could provide for relief from prosecution on such terms as it desired, without offending against any guaranty which the drawer of a worthless check is authorized to invoke.

In the case of *Commonwealth v. McCall*, 186 Ky. 301, the court had under consideration the Kentucky "cold-check" law, which contains this provision:

"*Provided, however,* That if the person who makes, issues, utters, or delivers any such check, draft, or order, shall pay the same within twenty days from the time he receives actual notice, verbal or written, of the dishonor of such check, draft, or order, he shall not be prosecuted under this section, and any prosecution that may have been instituted within the time above mentioned, shall, if payment of said check be made as aforesaid, be dismissed at the cost of defendant." (p. 304.)

This provision was interpreted as follows:

"It is clear under this statute, in fact so provided, that if the maker of the check 'shall pay the same within twenty days from the time he receives actual notice, verbal or written, of the dishonor,' he cannot be punished for giving the check, and that if any prosecution has been instituted before the expiration of the twenty days it shall be dismissed if the check within that time is paid. But the maker of the check cannot save himself from the penalty of the statute by returning property received on the faith of it, or any property or other thing of value except money, in the full amount of the check.

.    .    .    .    .    .    .    .    .    .    .    .

"Nothing short of this will acquit the maker, no matter what he and the payee have agreed to. Their agreement to settle the matter in any other way than as provided in the statute will not be allowed to stay the prosecution or prevent the enforcement of the penalty." (pp. 306, 307.)

The worthless-check act of Florida provides punishment for a person who gives a worthless check, who shall not, within twenty-four hours after written notice of presentation and nonpayment, make full and complete restitution by returning the consideration received for the check. In the case of *McQuagge v. State*, 87 So. 60, the supreme court of Florida held this statute to be constitutional, without, however, stating the objections to constitutionality or the reasons for the decision.

The judgment of the district court denying the motion in arrest of judgment is affirmed. The judgment sustaining the motion to quash counts two and three of the information is reversed, and the cause is remanded for further proceedings.