No. 34,430

The State of Kansas, *Appellee,* v. M. E. Gillen, *Appellant.*

(99 P. 2d 832)

Opinion filed March 9, 1940.

*George McGill, H. C. Castor, Thomas E. Elcock, Victor J. Rogers* and *J. Paul Jorgensen,* all of Wichita, for the appellant.

*Jay S. Parker,* attorney general, *Guy Neal,* county attorney, *E. C. Wilcox* and *J. Howard Wilcox,* both of Anthony, for the appellee.

The opinion of the court was delivered by

Thiele, J.: Defendant was convicted of a violation of G. S. 1935, 21-554, and appeals, assigning various claimed errors, which will be discussed.

Defendant was tried on an information containing two counts. He was found not guilty on the first count and we shall refer to the check there involved only to complete the story with reference to the check involved in the second count, on which a verdict of guilty was returned.

The second count charged that on October 25, 1937, the defendant unlawfully, etc., did "draw, make, utter, issue and deliver to the Corwin State Bank, a corporation, his certain check in writing, drawn upon the Southwest National Bank, in Wichita, Kan., in the sum of $1,900, payable to the order of the Corwin State Bank, knowing at the time of the making, drawing, uttering and delivering of said check that he had no funds on deposit in or credits with said bank with which to pay said check upon presentation."

Defendant's several pleas in abatement were overruled and his motions to quash the information, and to compel the state to elect, were denied. Upon arraignment, the defendant stood mute, a plea of not guilty was entered for him, and his trial proceeded. The evidence showed that after banking hours on October 25, 1937, the

defendant and his brother, E. G. Gillen, came to the banking house of the Corwin State Bank and met one J. R. Goodan, the cashier, and wanted to purchase a bank draft for $4,760. After some conversations, M. E. Gillen drew a check for $1,900 on the Southwest National Bank, of Wichita, signed Gillen & Company by M. E. Gillen, payable to E. G. Gillen, who in turn endorsed the check. This check and another for $2,860 drawn in a similar manner on another bank were delivered to Goodan in exchange for a draft for $4,760, payable to the order of M. E. Gillen, drawn by the Corwin State Bank on the Union National Bank of Kansas City. This draft was cashed at a bank in Wichita on the following day and in due course it was presented to and paid by the drawee bank. The two checks above mentioned were both protested when presented for payment to the banks on which they were drawn, the vice-president of the Southwest National Bank testifying that M. E. Gillen or Gillen & Company did not have an account in that bank in excess of $100 or any credit arrangement with that bank that it would honor checks drawn by either without their having money in the bank. Thereafter on November 4, 1937, E. G. Gillen came to the Corwin State Bank and told Goodan that he had caused M. E. Gillen and their mother to worry about the matter, and at that time E. G. Gillen presented for deposit two checks, one for $4,450 drawn by one Edwards on the Burns State Bank, and one for $4,350 drawn by the same person on the Peabody State Bank. The total of these two checks, $8,800, was thus disposed of: $3,100 was deducted to cover a banking item from Kansas City; $4,764 was deducted to cover the two checks of $1,900 and $2,860 above mentioned, plus $4 protest fees, and the balance of $936 was deposited to the credit of E. G. Gillen. At that time the two checks of $1,900 and $2,860 were returned to E. G. Gillen. For that reason they were not available and offered in evidence at the trial. The two checks of $4,350 and $4,450 were not paid on presentation. There was a great deal of evidence showing the details of the above transactions and tending to prove that the defendant M. E. Gillen and his brother E. G. Gillen were engaged in "check-kiting" activities of some scope.

Appellant contends the trial court erred in overruling his five pleas in abatement, the general tenor of which was that he had never had a preliminary hearing and had never been legally bound over and held for trial; that there was no evidence at the preliminary tending to show commission of the offense charged in the complaint; that

the district court was without jurisdiction to try him, and that his constitutional rights had been violated. The sum and substance of appellant's argument is that under G. S. 1935, 52-1702, a check is a bill of exchange drawn on a bank, payable on demand, that a bill of exchange is an unconditional order in writing addressed by one person to another, signed by the person giving it, requiring the other to pay on demand a sum certain in money to order or to bearer (G. S. 1935, 52-1001), and that the criminal statute under which the prosecution was had refers to such a check, and that under *State v. Avery,* 111 Kan. 588, 207 Pac. 838, it is obvious the act is intended to apply to negotiable paper. A particular point is that the evidence offered at the preliminary did not include the check itself from which it might be disclosed whether the check was payable on demand for a sum certain in money to order or to bearer and that no witness so testified, and therefore there was no proof appellant had ever issued or delivered any instrument conforming to the requirements of the crimes act. It may be remarked the same contention with respect to sufficient showing as to the check was made at later stages of the trial. Assuming that the word "check" as used in the crimes act means a "check" as defined in the negotiable instruments act, it may be said that when the witnesses at the preliminary used the word "check" it was used to describe an instrument having the required legal characteristics. It may be observed that at the preliminary it was not required of the state that it prove beyond a reasonable doubt that defendant committed the offense complained of, only that there was probable cause to believe he did. Attached to the abstract is what purports to be a copy of the evidence taken at the preliminary. We have read all of it, and we think the evidence sufficient to warrant defendant's being bound over and held for trial.

The other grounds of the pleas in abatement have been examined. The trial court did not err in overruling them.

Appellant's contention the trial court erred in denying his motion to quash the information is divisible. He first contends that as drawn the information stated several offenses in one count. In an early case, *State v. Schweiter,* 27 Kan. 499, it was held that where a statute makes either of two or more distinct acts connected with the same general offense subject to the same measure and kind of punishment, when separately committed, they may when committed at the same time by the same person be coupled in one count

as constituting one offense, and in such case the offender may be informed against as for one combined act in violation of the statute, and proof of either act will sustain a conviction. And see *State v. Sherman,* 81 Kan. 874, 107 Pac. 33; *City of Great Bend v. Shepler,* 109 Kan. 568, 572, 201 Pac. 78; *State v. O'Donnell,* 116 Kan. 182, 185, 225 Pac. 1078, and *State v. Clark,* 125 Kan. 791, 266 Pac. 37. It is also contended the information was subject to motion to quash in that it used only the statutory language and did not set out the particular facts in that the details of the check are not set forth; that the information does not charge that The Southwest National Bank was a bank, a depository for money, a corporation, a partnership or an individual, etc.; that the information does not charge the check was drawn for money, nor can it be certainly determined as to what bank it was drawn on. Our attention is directed to authorities to the effect that where an act is denounced by a statute creating an offense in generic terms, the information must go further in stating the facts than by using the language of the statute, citing *State v. Bellamy,* 63 Kan. 144, 65 Pac. 274; *State v. Briggs,* 94 Kan. 92, 94, 145 Pac. 866, and similar authorities. We have no quarrel with the rule, but do not agree with appellant as to the application he tries to make here. Summarized, the information clearly charges defendant with unlawfully drawing . . . and delivering to the Corwin State Bank his check in writing drawn upon the Southwest National Bank in the sum of $1,900 payable to the order of the Corwin State Bank, knowing he had no funds on deposit in or credits with said bank with which to pay the check upon presentation. We think the use of the word "check" as defined above, and as connected with the other subject matter, is sufficient on that point. The name of the person or institution to whom the check was delivered is clear, as is the sum of money to be paid. The contention that the name of the bank on which the check was drawn is not explicit cannot be sustained. It is not necessary that the bank on which the check is drawn be alleged to be both a bank and a depository. The fact that it is a named national bank at a particular place sufficiently identifies it as a particular bank, it cannot use the word "national" in its title unless it is a banking institution organized under the laws of the United States (U. S. C. A., Title 12, § 583), and the fact it is a national bank indicates its power to receive moneys and be a depository thereof (9 C. J. S. [Banks and Banking, § 690], p. 1245). Appellant likewise contends the informa-

tion was subject to a motion to quash because there was no aver-
ment the check was not paid by the bank on which it was drawn.
We think it implicit in the information it was not so paid, for it
is stated defendant had no moneys or credits in the drawee bank.
It is also contended the information failed to allege intent to de-
fraud. He concedes that in *State v. Avery*, 111 Kan. 588, 207 Pac.
838, it was held that intent is not an element of the offense with
which he stands charged. He says that in that case no considera-
tion was given another part of the same act, *i. e.*, G. S. 1935, 21-556,
which provides for abatement if it be shown, under circumstances
required, that the drawer of the check had no intent to defraud;
and argues that if intent is an element in one instance it is in
another. The question of whether intent was to be an element was
for the legislature. We are satisfied the Avery case correctly dis-
poses of the matter of intent as an element of the crime of which
appellant was charged and convicted.

The trial court did not err in denying the motion to quash the
information.

Appellant's brief contains "a discussion of the proceedings at trial
on the merits," and embraces complaint about rulings with respect
to admission and rejection of evidence, the instructions, etc., and
with a single exception as to instructions, no part is supported by
citation of any authority. We shall consider the matter briefly.
At the commencement of the trial and during the *voir dire* examina-
tion, appellant sought to interrogate E. C. Wilcox as to whom he
represented. On objection the trial court refused to permit such
an examination. It is urged this was error and that under G. S.
1935, 7-107, appellant had the right to make such inquiry. The
contention is not good. Assuming the statute refers to a criminal
action and was properly invoked, the motion was addressed to the
trial court's discretion and its ruling was not prejudicial error. Re-
specting complaints as to the instructions, it may be said a careful
search of the abstract discloses that the appellant requested no in-
structions on any point, made no objection to the instructions that
were given, and is not in a position to complain. Insofar as com-
plaint is made that evidence offered was erroneously rejected, it is
to be noted that such rejected evidence was not produced at the
hearing of a motion for a new trial in the manner required by the
code, and indeed from the briefs, we are left in the dark as to what
it was.

It is also contended there was a variance between pleading and proof in that the proof showed a check payable to the order of E. G. Gillen and not to the Corwin State Bank. The claimed variance is technical. The proof did show the check was drawn by M. E. Gillen payable to E. G. Gillen. But it also showed that E. G. Gillen endorsed it and gave it to M. E. Gillen, who delivered it to the Corwin State Bank, with another check so drawn, in exchange for the draft. Under G. S. 1935, 52-401, 52-402, 52-405, the endorsement, without more, made the holder the payee. Under G. S. 1935, 62-1718, it is provided that on appeal this court must give judgment without regard to technical errors or defects which do not affect substantial rights of the defendant. If there was a defect by reason of the claimed variance, it did not affect appellant's substantial rights.

Appellant's contentions with respect to alleged error in denying his motion for a new trial and in arrest of judgment have been answered by what has been said, with one exception. On hearing of the motion for a new trial, it was contended that no bailiff was ever appointed and qualified. It is clear a deputy sheriff acted in that capacity. The clerk of the court was unable to find any written appointment and the trial court stated it had no recollection of having made a formal appointment in writing and that only at the hearing had its attention been challenged to the matter. It is not contended the deputy sheriff was not properly sworn to act as bailiff and the record does not disclose any questions were asked to bring out that phase of the matter. We can only assume from the trial court's ruling that it found there was compliance with G. S. 1935, 62-1448, respecting retiral and deliberation of the jury. More complaint is made, however, that the jury asked the deputy sheriff to inform the court they wanted certain records in the case; that he reported to the court, which said they couldn't have them, and that he so informed the foreman of the jury. He also said he thought maybe he talked with one or two others a little; what he said was not disclosed. The trial court had all of the matter before it and concluded the appellant's rights had not been invaded. We are now asked to say that what transpired constituted reversible error. We cannot do so.

An intensive search of the record discloses there was no prejudicial or reversible error, and the judgment of the trial court is affirmed.