95 So.2d 20 (1957)
Carlos P. ENNIS, Appellant,
v.
The STATE of Florida, Appellee.
Supreme Court of Florida, En Banc.
March 27, 1957.
Rehearing Denied June 3, 1957.
*21 Ralph W. Rinehart, Tampa, for appellant.
Richard W. Ervin, Atty. Gen., and Joseph P. Manners, Asst. Atty. Gen., for appellee.
ROWE, Associate Justice.
On March 2, 1956 an information was filed in Marion County, charging the defendant (appellant) in two counts, in the first count, "that Carlos P. Ennis, late of the County of Marion and State of Florida, on the 29th day of January, in the year of our Lord One Thousand Nine Hundred and 56, with force and arms at and in the county and state aforesaid did unlawfully take, steal, and carry away and convert to his own use, one 1953, 4-door Chevrolet automobile, of the property of Emmett E. Quarles.

"Second Count
"And the State Attorney aforesaid, upon his oath aforesaid, further information makes that Carlos P. Ennis, late of the County of Marion and of the State of Florida, on the 30th day of January, 1956, at and in said County and State, did draw, make, utter, issue and deliver to Emmett E. Quarles, a certain check or written order for money of the tenor following, to-wit:

Leesburg, Florida 1/30 1956 No.
First National Bank of Leesburg 63-72
 ______
 631
Pay to the order of Emmett E. Quarles $1,000.00
One Thousand and No/100 ......................... Dollars

he, the said Carlos P. Ennis, then and there well knowing that he did not have sufficient funds on deposit in or credit with the said First National Bank of Leesburg, a banking corporation, with which to pay said check when presented, contrary to the form of the statute in such cases made and provided and against the peace and dignity of the State of Florida."
Motion was made by defendant's counsel to quash the second count, and this motion was overruled. Another motion was made by said counsel to require the State to elect the statute under which the defendant would be prosecuted, and also, to elect upon which count of the information the defendant would be prosecuted, which motion was also, overruled.
The defendant was tried, and the jury returned a verdict of not guilty of larceny as charged in the first count, and guilty of the offence charged in the second count
The defendant was adjudged guilty of and sentenced for the crime set forth in the second count.
An appeal has been taken by the defendant from the judgment and sentence. Several assignments of error have been urged but it is not necessary to discuss all of them. These questions are stated as follows:
Question I. Is Florida Statute, § 832.05 unconstitutional because it deprives the defendant of his constitutional right to meet the witnesses against him face to face?
Question II. Is Florida Statute, § 832.05 unconstitutional for the reason that it provides for imprisonment for debt without fraud and contrary to Section 16 of the Florida Declaration of Rights?
Question III. Did the court err in denying defendant's motion to compel the State to elect which count of the information under which it intended to prosecute the defendant?
Question IV. Did the court err in refusing to grant defendant's motion to quash the information?
Question V. Did the court err in its instructions to the jury?
We shall consider first Questions III, IV and V.
Question III. In the case of Griswold v. State, 77 Fla. 505. 82 So. 44, at *22 page 49, cited by counsel for the defendant it is said: "If it [the indictment] had contained two inconsistent counts * * * it would have been subject to a motion to elect upon which count the defendant should be tried" citing Florida cases. It has not been shown that the counts are inconsistent. One charges larceny and the other charged the giving of a worthless check. The testimony was to the effect that the check was given for a car, and by reason of the giving the check, which proved to be worthless, the car was procured. There was no inconsistency in the two counts. The defendant was found not guilty of the charge of larceny, and moreover he has not shown that he was in any wise prejudiced by the refusal to grant the motion to elect between the two counts.
Question IV. The information filed in this case, so far as the second count is concerned sets forth every essential element that may be required by the statute. It charges the offence substantially the same as is set forth in the case of Shargaa v. State, Fla., 84 So.2d 42.
Question V. No substantial error has been pointed out to any charge to the jury, and no objection seems to have been made in the court below to the charge for giving the worthless check for which defendant was found guilty.
Question I. Mr. Quarles, payee of the check, testified, over objection of counsel for the defendant, that the bank upon which the check was drawn returned the check to him unpaid, with a piece of paper attached saying thereon "no account, February 1st, 1856". The check and paper were introduced in evidence. The defendant contends that he was deprived of the right to cross-examine the bank official who made the notation on the paper attached to the check. It is argued by counsel for the defendant that Section 832.05(5) providing that:
In all prosecutions under this section, the introduction in evidence of any unpaid and dishonored check, draft or other written order, having the drawee's refusal to pay stamped or written thereon, or attached thereto, with the reason therefor as aforesaid, shall be prima facie evidence of the making or uttering of said check, draft, or other written order, and the due presentation to the drawee for payment and the dishonor thereof, and that the same was properly dishonored for the reasons written, stamped or attached by the drawee on such dishonored checks, draft, or other written orders; and, as against the maker or drawer thereof, the withdrawing from deposit with the drawee named in the check, draft or other written order, the funds on deposit with such drawee necessary to insure payment of said check, draft or other written order upon presentation within a reasonable time after negotiation; or the drawing, making, uttering, or delivering of a check, draft or other written order, payment of which is refused by the drawee, shall be prima facie evidence of knowledge of insufficient funds in or credit with such drawee * * *"
deprived the defendant of his constitutional right to meet witnesses against him face to face as provided in Sec. 11 of the Florida Declaration of Rights, F.S.A., and in the 6th Amendment of the Federal Constitution. This contention has been adversely answered in the case of Shargaa v. State, 84 So.2d 42, and see the citation thereunder. In the case now before us the evidence was sufficient to prove the corpus delicti, and also, a prima facie case under the second count of the information as required by Section 832.05(5), Florida Statutes of 1955, F.S.A.
Question II. Appellant contends that Section 832.05 Florida Statutes of 1955, F.S.A. is unconstitutional for the reason that it provides for imprisonment for debt without fraud and is contrary to Section 16 of the Florida Declaration of *23 Rights. Paragraphs (1) and (2) of that statute are as follows:
"(1) Purpose.  The purpose of this section is to remedy the evil of giving checks, drafts, bills of exchange and other orders on a bank without first providing funds in or credit with the depository on which the same are made or drawn to pay and satisfy the same, which tends to create the circulation of worthless checks, drafts, bills of exchange and other orders on banks, bad banking, check kiting and a mischief to trade and commerce.
"(2) Worthless checks.  It shall be unlawful for any person, firm or corporation to draw, make, utter, issue or deliver to another any check, draft, or other written order on any bank or depository for the payment of money or its equivalent, knowing at the time of the drawing, making, uttering, issuing or delivering such check or draft that the maker or drawer thereof has not sufficient funds on deposit in or credit with such bank or depository with which to pay the same on presentation; provided, that this section shall not apply to any check where the payee or holder knows or has been expressly notified prior to the drawing or uttering of same or has reason to believe that the drawer did not have on deposit or to his credit with the drawee sufficient funds to insure payment as aforesaid, nor shall this section apply to any post dated check."
It will be seen that the purpose of the legislature in the enactment of this statute was not for the collection of debts. The purpose was to penalize the evil of putting into circulation certain kinds of worthless commercial paper and thus causing mischief to banks and to trade and commerce. There seems to be no constitutional inhibition against a legislative act of this nature. A good result was no doubt intended by this legislation. It may be that some hardships will result from the enforcement of the act, and that also, some schemers will endeavor to use it for selfish motives, and indirectly to use same for the enforcement of a debt, but these possibilities are not sufficient to condemn the act as unconstitutional.
The constitutionality of this act has not been decided by this court. In the case of Anderson v. Bryson, 94 Fla. 1165, 115 So. 505 the court considered an act relating to the issuance of worthless checks and said that without the element of fraud, the act might be repugnant to Sec. 16 of the Declaration of Rights, but made no definite decision. We quote from Anderson v. Bryson, 115 So. at page 506-507 as follows: "Chapter 9328, Laws of 1923 [F.S.A. § 832.01 note], provides, in effect, that:
"Any person who `with intent to defraud, shall make, draw, utter or deliver any check, draft, or order for the payment of money upon any bank or other depository, knowing at the time * * * that the * * * drawer has not sufficient funds in or credit with such bank or other depository for the payment of such check, draft, or order in full upon its presentation, shall be guilty of a misdemeanor. * * *
"The statute further provides that, as against the maker or drawer thereof, the making, drawing, uttering, or delivering by such maker or drawer of a check or other order, payment of which is refused by the drawer (drawee) because of insufficient funds, shall be prima facie evidence of the intent to defraud and of knowledge that the drawer has insufficient funds in or credit with the drawee.
"(2) Our statute just mentioned is closely analogous to the California statute (Pen.Code, § 476a) on the same subject, and is almost identical in terms with the Georgia statute of 1919 (Laws, p. 220). See Hollis v. State, 152 Ga. 182, 108 S.E. 783. The purpose of our statute is to restrain and punish fraudulent practices associated with the issuance of worthless checks, drafts, or equivalent orders for the *24 payment of money, thereby preserving integrity of those classes of commercial paper in trade, commerce, and other banking. Under our statute, the intent to defraud is an indispensable element of the offence. In that respect our statute differs materially from the Kansas statute construed in State v. Avery, 111 Kan. 588, 207 P. 838, 23 A.L.R. 453. Without the element of fraud the statute might be repugnant to section 16 of the Declaration of Rights, which provides that `no person shall be imprisoned for debt, except in cases of fraud.'"
In the case of State v. Yarboro, 194 N.C. 498, 140 S.E. 216, 218, the court dealt with the validity of a statute substantially the same as the Florida Statute, § 832.05, F.S.A. The defendant, Yarboro was convicted upon a charge based upon the North Carolina statute. He made a motion in arrest of judgment upon the ground that the statutory charge stated no criminal offence. The motion was granted. The State appealed, and the decision of the lower court was reversed. The North Carolina Statute is as follows:
"Whereas, the common practice of giving checks, drafts, and bills of exchange, without first providing funds in or credits with the depository on which the same are drawn, to pay and satisfy the same, tends to create the circulation of worthless paper, overdrafts, bad banking, and check kiting, and a mischief to trade and commerce; and it being the purpose of this act to remedy this evil,
The General Assembly of North Carolina do enact:
"Section 1. It shall be unlawful for any person, firm or corporation, to draw, make, utter or issue and deliver to another, any check or draft on any bank or depository, for the payment of money or its equivalent, knowing at the time of the making, drawing, uttering, issuing and delivering such check or draft as aforesaid, that the maker or drawer thereof has not sufficient funds on deposit in or credit with such bank or depository with which to pay the same upon presentation." Public Laws of North Carolina 1927, c. 62.
In the opinion from State v. Yarboro it is stated:
"We recognize the principle that the police power may not be exercised in breach of rights which are guaranteed by the Constitution of the state or nation; but if * * * the assailed statute is not in conflict with the fundamental law, its enactment was a lawful exercise of legislative power. The police power is a necessary attribute of every civilized government; it is not a grant derived from or under any written Constitution, but it is inherent in the several states. It is but `another name for that authority which resides in every sovereignty to pass all laws for the internal regulation and government of the state,' and by means of it `the Legislature exercises a supervision over matters involving the common weal and enforces the observance by each individual member of society of the duties which he owes to others and to the community at large.' 6 R.C.L. p. 183, § 182, p. 185, § 184. * * * This attribute of sovereignty imports authority, not only to punish an injury which has become a public nuisance, but to punish fraudulent acts which tend to deceive, to destroy confidence, and to injure the public interests. Does the giving of worthless paper tend to deceive? Does the custom of putting it in the market places tend to destroy confidence? The transaction of business is dependent on credit; the basis of credit is confidence. The harmful effect of flooding the channels of commerce with checks and drafts of this character is manifest; it is not restricted to the bare transaction between the maker and the payee; its scope embraces the indorsement and the unrestrained transfer of the paper, releasing it as `a courier without baggage' hastening perchance to the four corners of the country. The offence consists, not *25 in presently obtaining something of value by deceit, but in putting in circulation worthless commercial paper which will ultimately result in financial loss. * * * The offence is complete only when a check or draft is made or drawn, etc., on any bank or depository for the payment of money or its equivalent, by one who knows at the time that he has not sufficient funds in or credit with such bank or depository with which to pay the paper when presented; `credit' meaning an arrangement or understanding with the bank or depository for the payment of the check or draft. * * *
"A statute almost identical with ours was construed by the Kansas Supreme Court in State v. Avery, 111 Kan. 588, 207 P. 838, 23 A.L.R. 453. There the first count of the information was based on a check to the Dodge City Wholesale Grocery Company for $133.44. To this count the defendant pleaded guilty and moved in arrest of judgment on the ground that the count did not state facts sufficient to constitute a public offence. The motion was denied, and on appeal the ruling was affirmed, the court saying:
"`The worthless check must be willfully drawn, knowing at the time there are no funds on deposit to meet it. Beyond that, the Legislature may, for protection of the public interest, require persons to act at their peril, and may punish the doing of a forbidden act without regard to the knowledge, intention, motive, or moral turpitude of the doer. There is no constitutional objection to such legislation, the necessity for which the Legislature is authorized to determine.' * * *
"`The defendant contends the statute is in conflict with paragraph 16 of the Bill of Rights, which forbids imprisonment for debt except in case of fraud. It is said the check was given to pay an acknowledged debt, long past due, and neither debtor nor creditor made or lost anything, but the debtor must be imprisoned because the debt was not discharged by check. The information does not disclose the consideration for the check. It may be conceded, however, the statute applies to a transaction of the character described. Nevertheless, the statute does not impose imprisonment for debt * * *.'"
The Yarboro case, supra has been cited with approval in State v. Crawford, 198 N.C. 522, 152 S.E. 504, 505; State v. Levy, 220 N.C. 812, 18 S.E.2d 355, 357; State v. White, 230 N.C. 513, 53 S.E.2d 436-437.
State v. Avery case, supra has been cited with approval in State v. Gillen, 151 Kan. 359, 99 P.2d 832, 835; State v. Marshall, 152 Kan. 607, 106 P.2d 688, 689; State v. Beam, 175 Kan. 814, 267 P.2d 509, 514; Application of Windle, 179 Kan. 239, 294 P.2d 213, 215.
The judgment is affirmed.
TERRELL, C.J., and HOBSON, ROBERTS, DREW and THORNAL, JJ., concur.
THOMAS, J., not participating.