*In re* Myers.

No. 26,450.

In re A. S. MYERS, Petition for a Writ of Habeas Corpus. .

SYLLABUS BY THE COURT.

1. BANKS AND BANKING — *Giving Worthless Check — Jurisdiction of Offense.* Where a worthless check is given by the maker in lieu of a similar worthless check for the same amount to the payee in part payment for a carload of apples, both checks being issued in apparent violation of R. S. 21-554, and the second check is executed in one county and transmitted by United States mail to the payees in another county, the jurisdiction of the offense is in either county.

2. SAME—*Worthless Check—Effect of Belated Partial Payment.* A belated payment of $15 on a worthless check for $200 does not render the offender immune to criminal prosecution under R. S. 21-556.

3. SAME—*Worthless Check—Effect of Bankruptcy Proceedings.* The fact that an offender against the worthless-check act was subjected to bankruptcy proceedings after issuing such check, and all the possible legal consequences which may flow therefrom, are insufficient to prevent an examining magistrate from properly binding over the offender to answer in the district court under R. S. 21-554 *et seq.*

4. SAME—*Worthless Check—Bankruptcy Proceedings as Abatement of Prosecution.* The provisions of the statute (R. S. 21-556) which authorize an abatement of a prosecution and the discharge of a person who has issued a worthless check considered, and *held,* that jurisdiction in proceedings concerning such abatement and discharge is vested in the district court or the district judge and are insufficient to prevent an examining magistrate from binding over such an offender, and are insufficient to justify the offender's discharge in habeas corpus before such proceeding for abatement and discharge is determined by the district court or the judge thereof.

5. SAME—*Worthless Check—Civil Liability—Effect of Discharge in Bankruptcy.* Declaratory judgment: Where an offender under the worthless-check statute receives his discharge in federal proceedings in bankruptcy, such discharge is the equivalent of payment of his civil liability to the payee of the check, and may be pleaded as payment of the check in the proceedings authorized by R. S. 21-556, whereby the offender may procure an abatement of a criminal prosecution against him and his discharge therefrom.

1. Banks and Banking, 7 C. J. § 391. 2. Id., 7 C. J. § 391. 3. Id., 7 C. J. § 391. 4. Id., 7 C. J. § 391. 5. Id., 7 C. J. § 391.

Original proceeding in habeas corpus. Opinion filed July 11, 1925. Writ denied.

Z. *Wetmore, Fred Hinkle* and *George M. Ashford,* all of Wichita, for the petitioner.

J. M. *Weisner,* county attorney, *O. A. Sheffer* and *Guy L. Hursh,* both of Topeka, for the respondent.

The opinion of the court was delivered by

DAWSON, J.: This is an original proceeding in habeas corpus. The petitioner was bound over by an examining magistrate of Ellis county to answer in the district court of that county for the offense of issuing a check on a bank in which he had no funds. The preliminary examination disclosed the following facts: In December, 1924, the petitioner, who was engaged in business at Satanta, in Haskell county, purchased a carload of apples from Messrs. Sedore & Roth, of Hays City, in Ellis county. In payment the petitioner gave the vendors two checks, one for $360.53, which the payee was to hold for some unstated time before presenting it for payment, and another check for $200, dated December 15, 1924, drawn on the Satanta State Bank. This latter check was protested for nonpayment because of want of funds. On December 22, 1924, the petitioner mailed to the vendors another check on the Satanta State Bank, dated December 20, 1924, for $200, and on the latter date he telegraphed the vendors that he was mailing them a check that day. This check presumably was given in lieu of the earlier one which had gone to protest. It too was protested for nonpayment.

Sometime later Sedore, one of the vendors, went to Satanta and the petitioner paid him $15. Sedore testified that this sum was a contribution by petitioner towards Sedore's expenses, but that he intended to give petitioner credit therefor. The petitioner's evidence tended to show that it was the understanding of the parties that the checks were not to be cashed until enough apples had been sold so that he would have money to meet them, and that one of the vendors, Sedore, was to stay with petitioner until the apples could be sold, which he "supposed would take about four days." Cold weather came on and two-thirds of the apples were frozen. Petitioner offered in evidence two letters from the vendors, dated January 4, 1925, and January 28, 1925, which tended to corroborate his statement of the transaction. The letters were manifestly those of importunate creditors, anxious to get some money from the peti-

tioner to meet their own pressing needs for money, and scarcely, if at all, susceptible of being construed as communications from payees who felt themselves wrongfully imposed upon by the delivery to them of bad checks.

Afterwards, on March 27, 1925, the petitioner was adjudged a voluntary bankrupt in the United States district court. Sedore and Roth, payees of petitioner's checks as above narrated, filed their claims before the referee in bankruptcy, April 9, 1925, and their claims were allowed in full. The referee warned the petitioner that if he paid those checks such payment would constitute an unlawful preference.

Petitioner bases his claim to a discharge in habeas corpus on various grounds:

He contends that if the evidence for the state shows that any offense was committed by him it was in Haskell county, where he resided and where he mailed the check dated December 20, 1924, to the payee. It was the giving of this second $200 check which was the basis of the complaint against him.

The statute under which petitioner is being prosecuted reads:

"It shall be unlawful for any person, corporation, or partnership, to draw, make, utter, issue or deliver to another any check or draft on any bank or depository for the payment of money or its equivalent, knowing, at the time of the making, drawing, uttering or delivery of any such check or draft as aforesaid that he has no funds on deposit in or credits with such bank or depository with which to pay such check or draft upon presentation." (R. S. 21-554.)

"That in any case where a prosecution is begun under this act the defendant shall have a right, upon application made for that purpose before trial, to have said action abated by showing to the court or judge that he has had an account in said bank upon which said check or draft was drawn, thirty days next prior to the time said check or draft was delivered, and that said check or draft was drawn upon said bank without intent to defraud the party receiving the same, and if the court shall so find, said action shall be abated and the defendant shall be discharged upon paying into court the amount of such check and the costs in said case." (R. S. 21-556.)

Since the purpose of the statute was to stop the mischievous practice of giving worthless checks (*The State v. Avery,* 111 Kan. 588, 207 Pac. 838), it would seem that the offense was committed where the mischief occurred—where the payees were injured by the defendant's act—which was in Ellis county.

In *People v. Rathbun,* 21 Wendell (N. Y.) 509, it was held:

"The crime of uttering and publishing is not complete until the paper is

transferred and comes to the hands or possession of some person other than the felon, his agent or servant; thus where a note with forged indorsements is sent by the felon per mail from one county to an individual in another county, for the purpose of obtaining credit upon it, the crime is not consummated until the note is received by the person to whom it was sent; and the proper place of trial is the county to which the note was sent." (Syl. ¶ 2.)

In the opinion the New York court said:

"A sealed letter cannot, in the nature of things, perform any of the offices mentioned until it reaches the place of its address; and then it may perform all or any of them." (p. 533.)

In *Lindsay v. The State,* 38 Ohio St. 507, it was said:

"If a letter containing a forged instrument is mailed at one place to be sent to another, the venue must be laid where the letter is received." (p. 511.)

The older cases on this general subject are collected in a note in 19 L. R. A. 775, but it seems clear that section 23 of our criminal code has an important bearing on the case at bar. It reads:

"When a public offense has been committed, partly in one county and partly in another, or the acts or effects constituting or requisite to the consummation of the offense occur in two or more counties, the jurisdiction is in either county." (R. S. 62-404.)

Defendant cites precedents involving prosecutions for obtaining property by false pretenses where it was held that the venue was in the county where the defrauded person parted with his property, and where it was deposited with a public carrier for delivery to the wrongdoer. (*In re Stephenson,* 67 Kan. 556, 73 Pac. 62; *The State v. Briggs,* 74 Kan. 377, 380, 86 Pac. 447.) These cases are not analogous. More in point, among our own cases, was *The State v. Mason,* 61 Kan. 102, 58 Pac. 978, where the president of a bank in Marion county made a false statement as to the financial condition of his bank and mailed it to the bank commissioner in Shawnee county. He was convicted of this offense in Marion county, and based error thereon, contending that his crime was committed in Shawnee county. This court held:

"Where a false report or false statement of the condition of a bank is made, subscribed and sworn to by an officer of a bank in one county, and is then transmitted to and received by the bank commissioner in another county, in which his office is held, the jurisdiction of the offense [is] in either county." (Syl. ¶ 3. See, also, *The State v. Johnson,* 109 Kan. 239, 244, 199 Pac. 104; *The State v. Gorman,* 113 Kan. 740, 744, 216 Pac. 290.)

Whether the crime charged was wholly or only partly consummated in Ellis county, it is clear that under section 23 of the crim-

inal code, quoted above, the petitioner is not wrongfully held to answer in Ellis county.

It is also urged that because the prosecuting witness accepted a payment of $15 the petitioner should not have been bound over. Just why this small payment should operate as a complete exculpation of the petitioner is not clear. As in most penal offenses, two wrongs were committed: a crime against the state and a civil redressible wrong against the prosecuting witness. A partial condonation of the civil wrong is of no significance so far as the offense against the state is concerned.

Petitioner makes a similar but ineffectual argument concerning the proceedings in bankruptcy. Of course the payees' claims evidenced by petitioner's worthless checks have been allowed by the referee in bankruptcy, but that fact is not alone of vital consequence in the criminal prosecution instituted against petitioner in Ellis county.

Touching the testimony before the examining magistrate which tended to prove that the checks given and mailed by petitioner and received by Sedore & Roth were not to be presented for payment but to be held until the apples were sold, it is obvious that the justice of the peace took no stock in that evidence. Perhaps the petitioner will have better luck before the jury when he makes his showing on that point before them. The justice was not compelled to give that testimony credence, and the petitioner was not improperly bound over, notwithstanding that testimony in his behalf.

A final point is involved in the fact that the bankruptcy proceedings have been precipitated which completely bar the petitioner from exculpating himself under that provision of the bad-check act (R. S. 21-554), which sanctions an abatement and dismissal of the prosecution under certain conditions. This point is premature. Although the bankruptcy proceeding may prevent the petitioner from making a belated payment of the $200 check in full, as to do so would or might constitute a preference, he cannot now be released on habeas corpus, however clear his disability as a bankrupt may be. The abatement of the prosecution which is sanctioned by the statute (R. S. 21-556) has to take place before the district court or the district judge upon a proper showing, pursuant to a timely application made for that purpose. (*The State v. Avery*, supra.) No other tribunal has jurisdiction of that proceeding. There the peti-

*In re* Myers.

tioner will have to show that on or about thirty days prior to December 20, 1924, he had an account in the Satanta State Bank, and that the $200 check of that date was given without intent to defraud. the payees, and on that point his version of the transaction regarding the checks, and that they were not to be presented for payment until he had turned the apples into cash, would be important; and if he shall pay into court the amount of the check and the costs, the prosecution against him shall be abated and he shall be discharged. As to the effect of the bankruptcy which may prevent his paying the amount of the $200 check in full, we can give no more than a declaratory judgment on that point; but since the county attorney joins in requesting that judgment on the point be declared, we would hold that, assuming the regularity of the bankruptcy proceeding, and assuming the absence of any issue of fraud in the bankruptcy court which might prevent the petitioner's discharge in bankruptcy in due time, the legal effect of such bankruptcy discharge would be that of payment (R. S. 60-3602; *Failor v. Wehe,* 98 Kan. 325, 327, 158 Pac. 74; *Bank v. Hoffman,* 102 Kan. 465, 171 Pac. 13), and the petitioner could rely on such discharge as an equivalent of payment under R. S. 21-556.

In view of the foregoing the petitioner is not entitled to a discharge at this time on a writ of habeas corpus, and the writ is therefore denied.