No. 42,861

STATE OF KANSAS, *Appellee*, v. KENNETH MORRIS, *Appellant*.

(372 P. 2d 282)

Opinion filed June 9, 1962.

*W. H. Coutts, III*, of El Dorado, argued the cause, and was on the briefs for appellant.

*Warren Ralston*, County Attorney, of El Dorado, argued the cause, and *William M. Ferguson*, Attorney General, of Topeka, and *Ervin E. Grant*, Assistant County Attorney, of El Dorado, were with him on the briefs for appellee.

The opinion of the court was delivered by

FATZER, J.: The defendant was convicted by a jury of issuing two worthless checks on January 25, 1960, each check being in an amount in excess of $50 in violation of G. S. 1949, 21-554, and he was sentenced to imprisonment in the Kansas State Penitentiary. (G. S. 1961 Supp., 21-555.)

On June 12, 1961, the defendant being without counsel, the court appointed W. H. Coutts, III, a member of the Butler County Bar, to represent him. Counsel represented the defendant throughout the trial with ability and diligence, and he has perfected this appeal without cost to the defendant.

The record indicates that the defendant operated a retail produce stand on South Broadway in Wichita. The checks in question were dated January 25, 1960, and drawn upon the East Side State Bank in Wichita. They were given to one Clarence Farthing in payment for apples which were sold and delivered to the defendant at El Dorado on that date. The checks were deposited in the Citizens State Bank in El Dorado, and in due course they were presented to the East Side State Bank where payment was refused due to insufficient funds in the defendant's account. The checks were dishonored and returned to the El Dorado bank. When advised of that fact, Farthing tried three or four times to locate the defendant in Wichita but he was told by persons there that the defendant had possibly gone to Missouri. The checks were never paid and the merchandise was never returned to Farthing.

On February 9, 1960, a warrant was issued for the defendant's arrest, and he was arraigned on June 8, 1960. On September 21, 1960, the defendant waived his preliminary hearing and was bound over to the district court. An information was filed charging the defendant with the crimes of which he was convicted. Later, on February 27, 1961, he was arrested in Phoenix, Arizona, where he refused to voluntarily return to Kansas, and he was extradited for trial.

On the day of his appointment, counsel filed an application alleging the defendant's right to abate the checks pursuant to G. S. 1949, 21-556. The application was heard the following day. The defendant showed by uncontradicted testimony that he had an account in the East Side State Bank 30 days next prior to January 25, 1960; that he had a balance of $8.49 on the date the checks were issued; that he had done business with Farthing for approximately five years, both on a cash basis and a checking basis; that the checks were given Farthing for payment in the ordinary course of business for produce which the defendant received from him, and that on that date he had money available to pay them and the costs of the action.

Prior to cross examining the defendant the assistant county attorney called the court's attention to the fact that the defendant was arraigned on June 8, 1960; that his preliminary hearing was waived and he was bound over to the district court on September 21, 1960; that there were two bond forfeitures by the defendant, one on October 15, 1960, and one on November 14, 1960, and the record shows he further stated:

"Mr. Grant: If it is a plea in abatement, I am willing to take it up but I think the fact that he has forfeited bond twice, has something to do with the question of his right to abate and he has to show to this court two elements, he has to show he had an account within 30 days and that he had no intention to defraud."

On cross-examination the defendant testified that he was given an opportunity to return to Kansas voluntarily, but he did not do so; that he was extradited from Arizona and returned to Butler County for trial, and that he knew the checks had not been paid. The court took the matter under advisement, and on June 16, 1961, entered the following order:

"I am denying the application of the defendant to abate the checks involved in the above entitled action, as provided for in G. S. 1949, sec. 21-556 by reason of the factual situation as shown to this court relating to the intent to defraud, because of Mr. Morris' testimony relating to these checks, and the length of time that has passed before he makes his application."

At subsequent stages by timely and repeated objections, one before trial on September 27, 1961, counsel renewed his application for abatement; also during the trial of the case, and upon the hearing of his motion for a new trial.

The sole question presented is whether the district court erred in denying the defendant's application to abate the checks prior to trial.

The defendant principally contends that since G. S. 1949, 21-556, does not fix a time limit within which a check must be paid in order for an accused to obtain the right of abatement, a denial of such right upon the grounds given by the district court is no reason in law to deny the defendant the right to abate the action. Further, that the evidence failed to show the least hint of an intent to defraud, and the mere fact that later, after the checks were returned marked insufficient funds, the defendant was extradited to stand trial cannot, standing alone, establish an intent which, he contends, there was no other evidence to show.

Did the district court err in failing to permit the defendant to abate the action? The crux of the appeal is the application of G. S. 1949, 21-556, which reads:

"That in any case where a prosecution is begun under this act, the defendant shall have a right, upon application made for that purpose before trial, to have said action abated by showing to the court or judge that he has had an account in said bank upon which said check or draft was drawn, thirty days next prior to the time said check or draft was delivered and that said check or draft was drawn upon said bank without intent to defraud the party re-

ceiving the same, and if the court shall so find, said action shall be abated and the defendant shall be discharged upon paying into court the amount of such check and the costs in said case."

The appeal is from the judgment of conviction, and while the state makes no specific point of the matter, it is intimated that because the defendant did not appeal from the order overruling his motion for a new trial, the sufficiency of the evidence to sustain the order denying the right to abate the action is not subject to appellate review. We do not agree. The right to abate a prosecution begun under the worthless-check statute (G. S. 1949, 21-554) is given the defendant "upon application made for that purpose before trial" (G. S. 1949, 21-556), and where it is denied, the sufficiency of the evidence to sustain the order denying that right may be reviewed upon appeal from the judgment of conviction. (*State v. Rogers*, 142 Kan. 841, 52 P. 2d 1185; *State v. Brown*, 144 Kan. 573, 61 P. 2d 901.)

During the trial and upon the hearing of his motion for a new trial, the defendant attempted to offer evidence to abate the action, which was refused. In view of the previous ruling of the district court on June 16, 1961, denying the defendant's application to abate the action before trial, that was not error (G. S. 1949, 21-556). While the statute makes provision for abatement under certain circumstances, that fact does not change the question whether the crime was previously committed. Hence, after an application to abate the action has been heard and denied, evidence pertaining to the ability of the defendant to do so during the trial of the criminal charge is properly excluded.

*State v. Avery*, 111 Kan. 588, 589, 207 Pac. 838, 23 A. L. R. 453, is the landmark case which construed and applied the statutes under which the defendant was convicted. It was there held that an *intent to defraud* was not an element of the offense, and was not essential to the validity of the statute. (G. S. 1949, 21-554.) Whatever the state of mind of the defendant may be technically called, he must have knowledge that he cannot meet the check when presented for payment and he must act willfully. In the opinion it was said:

". . . The worthless check must be willfully drawn, knowing at the time there are no funds on deposit to meet it. Beyond that, the legislature may, for protection of the public interest, require persons to act at their peril, and may punish the doing of a forbidden act without regard to the knowledge, intention, motive, or moral turpitude of the doer. . . .

". . . The purpose of the statute was to discourage overdrafts and resulting bad banking (*Saylors v. Bank*, 99 Kan. 515, 518, 163 Pac. 454), to stop

the practice of 'check-kiting,' and generally to avert the mischief to trade, commerce and banking which the circulation of worthless checks inflicts. Although the statute tends to suppress fraud committed by the worthless-check method, the evils referred to are all quite distinct from those consequent on fraud, and the statute is to be regarded as creating a new and distinct offense. . . ." (l. c. 590, 591.)

The case of *Commonwealth v. McCall*, 186 Ky. 301, was cited and quoted in the opinion in *State v. Avery*, supra, a case concededly based upon a statute requiring a fraudulent intent, and it was said:

" '. . . The mere giving of such a check with the intent to defraud, will constitute the offense, *and the intent to defraud will be present whenever money, property or other thing of value is parted with by the person to whom the check is given.' "* (Emphasis supplied.)

In *State v. Gillen*, 151 Kan. 359, 99 P. 2d 832, the defendant there made the argument that if intent to defraud was an element of the abatement statute (G. S. 1949, 21-556), then it must be an element of the insufficient funds statute (G. S. 1949, 21-554), since, he argued, "that if intent is an element in one instance it is in another." This court disposed of the contention by saying:

". . . The question of whether intent was to be an element was for the legislature. We are satisfied the Avery case correctly disposes of the matter of intent as an element of the crime of which appellant was charged and convicted." (l. c. 363.)

The purpose of the legislature in passing the abatement statute (21-556) was to give a right to any person who made an innocent mistake in issuing a check which is dishonored upon presentation by reason of insufficient funds with which to pay it, to correct his mistake and thus avoid any record of a criminal prosecution. Whatever contradiction there may be between the insufficient fund check statute (21-554) and the abatement statute (21-556), we think it apparent from the Avery and Gillen decisions that the so-called intent to defraud was construed to be present whenever money, property or other thing of value was parted with by the person to whom the check was given, and that it is incumbent upon the defendant to negate that intent by showing that he had no intention to willfully issue the check, knowing at the time he had no funds on deposit in the bank to pay it upon presentation. That showing is required to be made upon application prior to trial by showing to the court or judge that he had an account in the bank 30 days next prior to the time the check was delivered; that it was drawn without intent to defraud the party receiving it, "and if the court

shall so find," the action shall be abated upon paying into court the amount of the check and the costs in the case.

Courts may judicially notice earlier proceedings in the same case. (*Ablah v. Eyman*, 188 Kan. 665, 667, 365 P. 2d 181.) It is evident the district court took into consideration the fact that the defendant had forfeited appearance bonds on two occasions, and it was within the discretion of the court to consider those acts, together with the necessity of extraditing the defendant from Arizona for trial, in determining whether the showing made by him on the motion to abate was sufficient to require it to abate the action. Moreover, it was proper for the court to take into consideraion that flight to avoid prosecution was material on the question of the intent with which the act was committed. (*State v. Stewart*, 65 Kan. 371, 69 Pac. 335; *State v. Kesner*, 72 Kan. 87, 82 Pac. 720; *State v. Martin*, 175 Kan. 373, 265 P. 2d 297.)

It was not incumbent upon the state to prove the defendant issued the checks with intent to defraud. (*State v. Avery*, supra.) On the contrary, the burden of proof was upon the defendant to show his lack of intent to defraud, and he failed to sustain that burden to the satisfaction of the district court.

We cannot say the district court abused its discretion in failing to find that the defendant gave the checks without intent to defraud Farthing. Finding nothing in the record that would require us to reverse the conviction, the judgment is affirmed.