Nos. 42,859 and 43,017 (Consolidated)

THE STATE OF KANSAS, *Appellee*, v. LAWRENCE BREITENBACH, *Appellant.*

(373 P. 2d 601)

Opinion filed July 7, 1962.

*Rae E. Batt,* of Kinsley, argued the cause, and *Basil C. Marhofer,* of Ness City, was with him on the briefs for appellant.

*Tom Smyth,* County Attorney, of Ness City, argued the cause, and *William M. Ferguson,* Attorney General, of Topeka, was with him on the briefs for appellee.

The opinion of the court was delivered by

FATZER, J.: These are appeals by the defendant from orders overruling his motion to abate the criminal action on a worthless check under G. S. 1949, 21-556, upon a showing that he has been discharged in bankruptcy. The facts are not in dispute.

On March 21, 1961, complaint was made in the county court of Ness County charging the defendant with giving a worthless check to the Ransom Farmer's Coop Union in the amount of $563.50, drawn upon the Farmers and Merchants State Bank of Macksville. The defendant waived preliminary hearing, and was bound over to the district court for trial.

Following the filing of an information in the district court, the defendant filed his application to abate the action and for stay of proceedings, and alleged that on August 23, 1961, he was adjudged a bankrupt in the United States District Court for the District of Kansas, but that he had not as yet received his discharge in bankruptcy. The prayer was that the action be abated and that all proceedings be stayed in the district court of Ness County until the bankruptcy proceeding was determined.

On September 7, 1961, a hearing was had on the application to abate at which the defendant offered evidence that he had an account in the Macksville bank 30 days next prior to the giving of the check to the Ransom Coop; that he and his wife conducted a trucking operation in the name of the Breitenbach Trucking Company of Belpre consisting of 24 outfits: 9 tractors and 21 trailers; that other truckers owning tractors pulled some of his trailers; that he would sign about 100 blank checks a week which were used by his drivers for trucking expense, gasoline and to buy grain; that the check in question was given by one of his drivers to the Ransom Coop for grain; that his drivers bought grain all over the country, and that he did not know when or how many of the checks would be negotiated at any given time. He further testified that he did not know the check to the Ransom Coop would overdraw his account at the bank.

The district court found that the defendant had an account in the bank 30 days next prior to the giving of the check, and that it was given without intent to defraud the Ransom Coop. Accordingly, the court entered its order that the defendant had the right to abate the action by paying the check and the costs, and overruled the application to stay proceedings. Appeal No. 42,859 is from the orders overruling defendant's motion for a new trial and to stay proceedings, and from that portion of the order where the court "ordered the defendant to abate said proceedings by paying said check upon determination by said court of the defendant's right to abate as provided by G. S. 1949, 21-556."

On November 15, 1961, the defendant received his discharge in bankruptcy, and thereafter filed a motion to dismiss the worthless-check action alleging his discharge in bankruptcy. Upon the hearing of the motion to dismiss, the district court found that it had entered its order on September 7, 1961, finding the defendant had shown the right to abate the action by paying the check and the costs pursuant to G. S. 1949, 21-556, and upon his failure to pay the check and costs, the motion to dismiss was overruled. The defendant filed a motion for a new trial, which was overruled, and appeal No. 43,017 is from that order. Upon application of the parties, the appeals were consolidated.

The sole question presented is whether a discharge in bankruptcy may be pleaded by an offender under the worthless-check statute

( G. S. 1949, 21-554) as payment of the check in a proceeding author-
ized by G. S. 1949, 21-556, and thereby secure an abatement of the
criminal action and obtain his discharge.    Section 21-556 reads:

"That in any case where a prosecution is begun under this act, the defendant
shall have a right, upon application made for that purpose before trial, to have
said action abated by showing to the court or judge that he has had an account
in said bank upon which said check or draft was drawn, thirty days next prior
to the time said check or draft was delivered and that said check or draft was
drawn upon said bank without intent to defraud the party receiving the same,
and if the court shall so find, said action shall be abated and the defendant shall
be discharged upon paying into court the amount of such check and the costs in
said case."

The defendant argues that since the district court found he had
a right to abate the action, the showing of his discharge in bank-
ruptcy of all his debts was the equivalent of payment of the check
and such discharge may be pleaded as payment of the check in an
abatement proceeding authorized by G. S. 1949, 21-556, and he
relies upon *In re Myers*, 119 Kan. 270, 237 Pac. 1026.   In support
of his argument the defendant contends that since the Coop did not
file its claim in the bankruptcy court and secure a determination
that the check was a debt incurred to obtain property by false
representations and was not dischargeable under Sec. 17a (2) of
the Bankruptcy Act (11 U. S. C. A. § 35 [a] [2]), the discharge in
bankruptcy constituted payment of the check.   He asserts that had
such a claim been made and the bankruptcy court determined that
the check was the instrument by which grain was obtained by the
false representations of the defendant, the debt represented by the
check would not have been discharged and the district court would
have been permitted to determine whether the defendant had the
right to abate the check, and if it found that he did, to require pay-
ment of the check and costs as a prerequisite for his discharge from
the criminal action.

We first consider the applicability of *In re Myers*, supra.   That
was an original proceeding in habeas corpus in which the petitioner
sought release from the sheriff of Ellis County after being bound
over to the district court for trial on a worthless-check charge.   The
abstracts and briefs on file in the State Library (Vol. 12, Briefs 119
Kan.) show the petitioner alleged that he was arrested for issuing
a worthless check in Haskell County for apples purchased in Ellis
County and that no crime had been committed in Ellis County; that
prior to his arrest he had filed a voluntary petition in bankruptcy;

that he had been adjudicated a bankrupt and had surrendered his assets to the court in bankruptcy; that the vendor-payees of the check had filed their claim with the referee in bankruptcy, which was allowed; that the referee in bankruptcy advised the petitioner not to pay the check and that payment of the same within four months prior to the adjudication of the bankrupt would result in a preference to the payees; that the allowance by the referee of a claim based on the check removed the check from the purview of the criminal statute and resulted in a bar of the action, and that a payment of $15 on the check destroyed the right to make a demand on the bank and also removed it from the prohibition of the statute. The transcript of the evidence taken at the preliminary hearing was attached to the petition and showed the petitioner attempted to abate the criminal action before the examining magistrate.

As the opinion indicates, the writ of habeas corpus was denied, it being held that although the check was given in Haskell County and mailed to the vendors in Ellis County, jurisdiction of the crime was in either county; that the fact the worthless check had been allowed by the referee in bankruptcy was not alone of vital consequence with respect to the criminal action; that the attempt to abate the criminal action before the examining magistrate was premature since jurisdiction of such a proceeding is vested in the district court, and the fact that bankruptcy proceedings had been precipitated did not bar the petitioner from exculpating himself under the worthless-check statute (21-556) "which sanctions an abatement and dismissal of the prosecution under certain conditions."

While the opinion contains language that, and paragraph 5 of the syllabus so holds, a discharge in bankruptcy is the equivalent of payment of the defendant's *civil liability* to the payee of the check and may be pleaded as payment of the check in a proceeding to abate the action, such a holding overlooks the mandatory requirements of 21-556 to abate the defendant's *criminal liability* and secure his discharge from the criminal action. We have no quarrel with the holding that a discharge in bankruptcy is the equivalent of payment of the *civil liabilities* of all the bankrupt's provable debts (11 U. S. C. A. § 35; G. S. 1949, 60-3601, 3602; *Failor v. Wehe,* 98 Kan. 325, 158 Pac. 74; *Bank v. Hoffman,* 102 Kan. 465, 171 Pac. 13). But the language that a discharge in bankruptcy may be pleaded as payment of a worthless check in a proceeding under 21-556 to abate

a criminal action must be regarded as a mere gratuitous expression in the form of dicta on a point not an issue for decision, and we are compelled to hold that paragraph 5 of the syllabus and the corresponding portion of the opinion must be overruled.

The right to abate a criminal action afforded an offender under 21-556 is a right which he may or may not invoke. It is a privilege given by law to permit such an offender to correct an innocent mistake in issuing an insufficient fund check (*State v. Morris*, 190 Kan. 93, 372 P. 2d 282). If the right is invoked, the offender must bring himself clearly within the terms of the statute, that is, he must show to the satisfaction of the court or judge that he has complied with the three statutory requirements: first, that he had an account in the bank 30 days next prior to the giving of the check; second, that the check was given without intent to defraud the party receiving it, and third, if the court shall so find, *"said action shall be abated and the defendant shall be discharged upon paying into court the amount of such check and the costs in said case"* G. S. 1949, 21-556; *State v. Morris*, 190 Kan. 93, 372 P. 2d 282).

While grain may have been obtained from the Coop by the false representations of the defendant's worthless check within the meaning of Sec. 17a (2) of the Bankruptcy Act (1 Collier on Bankruptcy, 14th Ed., § 17.16, p. 1612), that offense is not the crime the defendant is alleged to have committed (*State v. Avery*, 111 Kan. 588, 207 Pac. 838), and such a fact becomes immaterial where the defendant seeks to abate the criminal action under 21-556. The criminal prosecution is a matter in which the state alone is interested, and it is wholly unrelated to the proceedings in the bankruptcy court. It is elementary that there is a difference between a criminal action and a civil proceeding such as one in bankruptcy. Where the violation of a right admits of both a civil and criminal remedy, the right to prosecute the one is not merged in the other (G. S. 1949, 60-109). The state is not here seeking to enforce the Coop's civil remedy. On the contrary, the defendant is seeking to abate the criminal action and obtain his discharge. That may be done only in the manner provided by the statute. While his discharge in bankruptcy is the equivalent of payment of his *civil liabilities* to his creditors, his payment of the check and costs to abate his *criminal liability* would not now constitute a preference of his creditors. Nor does the fact that the bankruptcy court made no de-

termination that the debt represented by the check was not dischargeable under Sec. 17a (2) preclude the state from asserting that the defendant comply with the clear and unambiguous terms of the statute.

The defendant's right to abate the action has been established, but he has only complied with the first two statutory requirements. Upon his compliance with the third requirement, that is, by forthwith paying into court the amount of the check and the costs of the case, the criminal action will be abated and he is entitled to his discharge, otherwise the case should proceed to trial upon the information.

Our examination of the record discloses no error and the judgment of the district court is affirmed.

SCHROEDER, J., dissenting: The decision of *In re Myers,* 119 Kan. 270, 237 Pac. 1026, is sound law and, in my opinion, the court should adhere to it. Syllabus ¶ 5 reads:

"Declaratory judgment: Where an offender under the worthless-check statute receives his discharge in federal proceedings in bankruptcy, such discharge is the equivalent of payment of his civil liability to the payee of the check, and may be pleaded as payment of the check in the proceedings authorized by R. S. 21-556, whereby the offender may procure an abatement of a criminal prosecution against him and his discharge therefrom."

The foregoing statement of the law is clear and has specific application to the facts in the case at bar. It has been the law of this state since 1925. More important, however, is the fact that the foregoing rule of law is supported by sound logic and reasoning. It cannot be said to be clearly erroneous.

The trial court in its journal entry of September 7, 1961, found that the above entitled action was a prosecution under the "worthless check" statutes of the state of Kansas, and *further found that the appellant, Lawrence Breitenbach, "has shown the right to abate said check or instrument."* (Emphasis added.) But the trial court overruled the appellant's motion for an order staying and abating all proceedings therein until determination of the appellant's bankruptcy in the United States District Court.

Thereafter, the appellant filed a motion to dismiss the action on the ground that he had obtained a discharge in bankruptcy. The journal entry of the trial court dated December 7, 1961, found the order of discharge attached to the appellant's motion was a true and correct copy of said order of discharge made and entered on the

15th day of November, 1961, in the United States District Court for the District of Kansas. The court further recognized its previous finding that the appellant "had shown the right to abate said check, as provided by G. S. 1949, 21-556." It further ordered the appellant "to abate said check by paying said check and the costs" of the action, and overruled appellant's motion to dismiss.

For the reasons hereafter assigned it is respectfully submitted the trial court should be reversed.

The appellant is charged with violation of G. S. 1949, 21-554, which provides:

"It shall be unlawful for any person, corporation, or partnership, to draw, make, utter, issue or deliver to another any check or draft on any bank or depository for the payment of money or its equivalent, *knowing,* at the time of the making, drawing, uttering or delivery of any such check or draft as aforesaid that he has no funds on deposit in or credits with such bank or depository with which to pay such check or draft upon presentation." (Emphasis added.)

The right to procure an abatement of a criminal prosecution on a "worthless check" charge is provided in G. S. 1949, 21-556, as follows:

"That in any case where a prosecution is begun under this act, the defendant shall have a right, upon application made for that purpose before trial, to have said action abated by showing to the court or judge that he has had an account in said bank upon which said check or draft was drawn, thirty days next prior to the time said check or draft was delivered and that said check or draft was drawn upon said bank without intent to defraud the party receiving the same, *and if the court shall so find, said action shall be abated* and the defendant shall be discharged upon paying into court the amount of such check and the costs in said case." (Emphasis added.)

From the foregoing sections it may be noted the appellant must have knowingly committed the offense in 21-554, *supra,* with which he is charged, and the trial court specifically found that the appellant delivered the check in question *without intent to defraud* the party receiving the same. The specific mandate of 21-556, *supra,* is that *"if the court shall so find, said action shall be abated."* (Emphasis added.) This mandate is not preceded or followed by a condition or proviso. The language of the statute following this specific provision begins with the word *"and."* It says "and the defendant shall be *discharged* upon paying into court the amount of such check and the costs in said case." (Emphasis added.) The portion of the statute following the word "and" relates to payment and speaks of the appellant's discharge from prosecution, *not his right to abate.*

It is recognized that the payment of a "worthless check" has no bearing upon a criminal prosecution under the provisions of 21-554, *supra*. Payment of the check relates solely to the civil liability of the maker of such check. The legal effect of the appellant's discharge in bankruptcy would be that of payment. (G. S. 1949, 60-3602.) In the opinion of *In re Myers*, supra, it was said:

". . . assuming the regularity of the bankruptcy proceeding, and assuming the absence of any issue of fraud in the bankruptcy court which might prevent the petitioner's discharge in bankruptcy in due time, the legal effect of such bankruptcy discharge would be that of payment (R. S. 60-3602; *Failor v. Wehe*, 98 Kan. 325, 327, 158 Pac. 74; *Bank v. Hoffman*, 102 Kan. 465, 171 Pac. 13), and the petitioner could rely on such discharge as an equivalent of payment under R. S. 21-556." (p. 275.)

On September 7, 1961, when the proceedings for the abatement of the check in question were conducted in the district court, the appellant had been adjudged a bankrupt. Payment by the appellant to the maker of the check in question would at that time have been impossible while his assets were under the supervision of the federal court in bankruptcy. The effect of the court's decision herein was to place the appellant in a dilemma wherein the provisions of 21-556, *supra*, were absolutely unavailable to him. In other words, since he had been adjudged a bankrupt, he was required as a matter of necessity to stand criminal prosecution without any right to abate the prosecution, even though such check was shown to have been given without intent to defraud. This, in my opinion, violates the equal protection clause of the federal constitution, since it is only by the intervention of federal law that the state court places the appellant in this dilemma.

If a discharge under the federal bankruptcy act is payment to one creditor of the bankrupt, it is payment to all of his creditors similarly situated, and this includes the civil liability of the maker of a "worthless check" to the payee.

Under the court's decision it is immaterial whether the payee of the check in question filed a claim as a creditor in the bankruptcy court for the amount of the check. If the claim was filed, partially allowed, and partially paid from the assets available in the bankruptcy court, could it be said that the district court had power to require full payment of the amount of the check in abatement proceedings under the provisions of 21-556, *supra*, where the court specifically found that the check was given by the maker without intent to defraud the party receiving the check? I think not. This tends to show the decision of *In re Myers*, supra, is sound.

The requirement under the provisions of 21-556, *supra*, that the district court specifically find the check or draft in question was drawn upon a bank without intent to defraud the party receiving the same, is adequate protection against the abuse of rights under the provisions of such statute. The judges of our trial courts must be presumed to be honest and act honorably in the administration of the laws of this state upon the facts and the evidence as presented in a given situation. The awkward posture of this case on appeal, by reason of the trial court's finding that the check was not given with intent to defraud, should not alter the law in this state.

In my opinion, the appellant was entitled to a stay of proceedings until such time as the matter of his discharge in the bankruptcy court had been adjudicated. He sustained his burden of proof at the abatement proceedings which resulted in a finding and order of the district court granting him the right to abate the proceedings. This is not to say that the appellant would have been entitled to a stay of proceedings had the court made a finding and order that he had not shown such right to abate, but having made such showing and having shown that he had been adjudged to be bankrupt, the appellant was entitled as a matter of law to a stay of proceedings in the district court.

This would not leave the appellee without an adequate remedy at law. As a matter of fact, the appellee is notified of the appellant's intention concerning abatement, of the fact that the appellant has been adjudged to be bankrupt, and of the fact that the appellant was seeking a discharge. Under these circumstances, the appellee could have made an appearance in the United States District Court in bankruptcy, and attempt to show that such debt was not, as a matter of law, a dischargeable debt. Insofar as the record here discloses, this the appellee did not do, nor was there any showing before the district court that the appellee had any intention of contesting the dischargeability of the debt.

It is respectfully submitted that the order of the district court entered on the 7th day of September, 1961, refusing to stay the abatement proceedings, the order entered on the 5th day of October, 1961, overruling the motion for a new trial, and the order entered on the 7th day of December, 1961, refusing to dismiss the action should be reversed.

PRICE, J., joins in the foregoing dissenting opinion.