**In re Marcia Kay BARNETT a/k/a Marcia K. Barnett, Debtor.**

**Marcia Kay BARNETT a/k/a Marcia K. Barnett, Plaintiff,**

v.

**K–MART, For Kids Only and Robert E. Davis, Leavenworth County Attorney, Defendants.**

**Bankruptcy No. 81–40388. Adv. No. 81–0188.**

United States Bankruptcy Court, D. Kansas.

Nov. 19, 1981.

Byron C. Loudon, Carl S. Black, McDowell, Rice & Smith, Kansas City, Kan., for debtor.

William E. Pray, Chief Deputy County Atty., Leavenworth, Kan., for defendant Davis.

Lloyd C. Swartz, Topeka, Kan., Trustee.

### MEMORANDUM OF DECISION

JAMES A. PUSATERI, Bankruptcy Judge.

The debtor, Marcia Kay Barnett, filed a motion seeking an order to show cause why the Leavenworth Kansas County Attorney should not be held in contempt for violating the automatic stay provided by § 362 of the Code, for filing three criminal complaints against the debtor after the debtor filed a chapter 13 petition and plan.

The County Attorney, Robert E. Davis, replied alleging no violation of the automatic stay.

The issues for determination are:

1. Has a punishable contempt been committed.

2. Does K.S.A. § 21–3707 or a portion of it conflict with the Bankruptcy Code.

3. If a conflict exists, what resolution of the conflict is required.

The parties have submitted legal memoranda, the Court has heard oral arguments and the matter is ready to be resolved.

## FINDINGS OF FACT

In March, 1981 the County Attorney of Leavenworth County, Kansas filed a criminal action under K.S.A. § 21–3707 (1974) on one insufficient fund check (NSF). The debtor pleaded guilty on March 30, 1981 and was sentenced on May 15, 1981. Part of the sentence ordered restitution to the creditor on the check.

On May 29, 1981 the debtor filed a chapter 13 petition in this Court.

On June 2, 1981 the Leavenworth County Attorney filed a criminal complaint charging the debtor with giving a worthless check in the amount of $21.38 to K–Mart on September 26, 1980 (Case No. 81 CR 377). No notice that this check had been dishonored was received by the debtor prior to filing bankruptcy though notice was received on June 7, 1981.

On June 17, 1981 the debtor's attorney filed a motion to dismiss the complaint alleging it violated the automatic stay provisions of § 362 of the Bankruptcy Code.

On June 18, 1981 another complaint alleging the issuance of a worthless check in the amount of $33.01 to K–Mart on May 7, 1981 was filed by the Leavenworth County Attorney (Case No. 81 CR 444). On June 19, 1981 the debtor's attorney objected on the same grounds as the previous objection, arguments were heard by the Leavenworth County, Kansas District Court, and the matter was taken under advisement.

On June 25, 1981 the district court denied dismissal (a Journal Entry was filed August 3, 1981).

On July 21, 1981 a third complaint was filed for the same offense on a third check issued September, 1980 payable to "For Kids Only" in the amount of $6.73 (Case No. 81 CR 497). On August 20, 1981 the debtor's attorney filed this adversary proceeding. On August 21, 1981 trial was held in the state court on the three criminal charges and the Judge took the matter under advisement.

No notice of dishonor was received by the debtor before filing bankruptcy on any of the three checks that are the subject of the state criminal action. The creditors K–Mart and For Kids Only were not listed in the debtor's schedules; however, according to debtor's counsel, an amended plan providing payment to all NSF creditors is to be filed.

## CONCLUSIONS OF LAW

The Court is asked to determine if a conflict exists between the Bankruptcy Code and state legislation making it a crime to issue a worthless (NSF) check, and to resolve any conflicts. As the United States Supreme Court said:

> Deciding whether a state statute is in conflict with a federal statute and hence invalid under the Supremacy Clause is essentially a two-step process of first ascertaining the construction of the two statutes and then determining the constitutional question whether they are in conflict.

*Perez v. Campbell*, 402 U.S. 637, 644, 91 S.Ct. 1704, 1708, 29 L.Ed.2d 233, 239 (1971). This Court will therefore proceed to apply this two-step process.

### I. State Worthless Check Law

The Kansas statute in issue is K.S.A. § 21–3707 (1974) providing:

> (1) Giving a worthless check is the making, drawing, issuing or delivering or causing or directing the making, drawing, issuing or delivering of any check, order or draft on any bank or depository for the payment of money or its equivalent with intent to defraud and knowing, at the time of the making, drawing, issuing or delivering of such check, order or draft . . ., that the maker or drawer has no deposit in or credits with such bank or depository or has not sufficient funds in, or credits with, such bank or depository for the payment of such check, order or draft in full upon its presentation.

> (2) In any prosecution against the maker or drawer of a check, order or draft payment [under this statute] . . ., the mak-

*ing, drawing, issuing or delivering of such check shall be prima facie evidence of intent to defraud and of knowledge of insufficient funds in, or on deposit with, such bank or depository, providing such maker or drawer shall not have paid the holder thereof the amount due thereon and a service charge not exceeding three dollars ($3) for each check, within seven (7) days after notice has been given to him that such check, draft or order has not been paid by the drawee* . . .

\*       \*       \*       \*       \*       \*

*(4) Giving a worthless check is a class E felony if the check, draft or order is drawn for fifty dollars ($50) or more. Giving a worthless check is a class A misdemeanor if the check, draft or order is drawn for less than fifty dollars ($50).*

In prosecutions under K.S.A. § 21–3707, in addition to imposing a fine or term of confinement under K.S.A. § 21–4501 to 4503 (Supp.1980), a court may require the defendant to make *restitution*, a civil remedy, to the victim under K.S.A. § 21–4603 (Supp. 1980):

*(3) This section shall not deprive the court of any authority conferred by any other section of Kansas Statutes Annotated to . . . impose any other civil penalty as a result of conviction of crime.*

See generally, Note, Creative Punishment: A Study of Effective Sentencing Alternatives, 14 Washburn L.J. 57, 64–65, 67–68 (1975). That restitution is a civil collection remedy is further supported by the Kansas court's own characterization of the NSF statute when it held *The worthless check act does not concern itself with whether or not the offender was able to keep his ill-gotten gains. Foor v. State*, 196 Kan. 618, 620, 413 P.2d 719 (1966). Thus Kansas has a fairly typical NFS check statute and provides fairly typical remedies. See Comment, Insufficient Funds Checks in the Criminal Area: Elements, Issues, and Proposals, 38 Mo.L.Rev. 432 (1973).

The Kansas courts have long held the NSF check statute is designed

*to discourage overdrafts and resulting bad banking . . . to stop the practice of* *'check-kiting,' and generally to avert the mischief to trade, commerce and banking which the circulation of worthless checks inflicts . . .*

*State v. Morris*, 190 Kan. 93, 96–97, 372 P.2d 282 (1962); *State v. Avery*, 111 Kan. 588, 589, 207 P. 838, 839 (1922). Other courts and commentators have said the purpose of NSF check statutes is anti-nuisance. Note, Worthless Check Statute—Penalty Provision, 14 U.Miami L.Rev. 486, 487 (1960), to preserve the integrity of commercial paper, *Anderson v. Bryson*, 94 Fla. 1165, 1170, 115 So. 505, 507 (1927), prevent fraud, discourage use of worthless checks, facilitate prosecution by defining standards of criminal conduct, and provide merchants with simple and effective methods to recoup money. Note, The North Carolina Bad Check Law: A Study and a Proposal, 50 N.C.L.Rev. 1079, 1096 (1972) (hereinafter, Note, Bad Check Law). Though some have denied the final purpose, it cannot seriously be questioned that the statute is designed to protect merchants especially when the remedy of restitution is imposed because restitution helps only the individual merchant. A 1954 survey in Kansas showed *nearly all* recipients of NSF checks were not interested in prosecution. *It is quite clear that the vast majority of merchants and others who receive worthless checks regard law enforcement officers and the courts as mere agencies to collect their money.* Callahan, The Worthless Check Problem, 22 J.B.A.K. 195, 196 (1954). This attitude prevails in other states where surveys show *a significant number* . . . [of merchants] *rely upon* . . . [worthless statutes] *rather than upon a civil remedy.* Note, Bad Check Law, 50 N.C.L.Rev. *supra* at 1086.

■ K.S.A. § 21–3707(2) incorporates a presumption of intent to defraud and knowledge if the drawer does not cure the NFS check within 7 days of receiving *notice*. The statute does not specify from whom the notice must come, but it is clear the creditor can and often does activate the presumption by sending out notice, *State v. Calhoun*, 224 Kan. 579, 581 P.2d 397 (1978);

*State v. Fisher*, 2 Kan.App.2d 546, 583 P.2d 1038 (1978) (if creditor had put sufficient postage on notice letter, notice would have been sufficient). See also Comment, Insufficient Funds Checks in the Criminal Area: Elements, Issues and Proposals, 38 Mo.L. Rev. 432, 439 (1973). Notice is not a prerequisite to prosecution under K.S.A. § 21–3707, but without notice, the state cannot establish intent and knowledge by a presumption, but must prove the drawer's intent and knowledge. *State v. Shannon*, 194 Kan. 258, 262, 398 P.2d 344 (1965).

## II. *Federal Law*

As a preliminary matter, this Court notes it does not have the power to enjoin another court, 28 U.S.C. § 1481, though it does have the power to *issue any order . . . that is necessary or appropriate to carry out the provisions of this title.* 11 U.S.C. § 105. Section 362(a) of the Code stays any acts aimed at collection of debts owed by the debtor arising before bankruptcy was filed. § 362(a)(1), (3) and (6). Excepted from this stay is *the commencement or continuation of a criminal action or proceeding against the debtor*, § 362(b)(1). Legislative history indicates:

> The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, . . .

S.Rep.No. 95–589, 95th Cong., 2nd Sess. 54 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5840. Legislative history also indicates:

> The bankruptcy laws are not a haven for criminal offenders . . . Thus, criminal actions and proceedings may proceed in spite of bankruptcy.

*Id.* at 51, U.S.Code Cong. & Admin.News 1978, p. 5837.

Thus on one hand the Kansas NFS check statute conflicts with the federal bankruptcy laws when charges are brought or are pending against a debtor filing bankruptcy because it is a form of collection used by creditors, especially when restitution is recommended by the county prosecutor and ordered by the state court, and if the debtor has already filed bankruptcy, any notice mailed allowing 7 days to cure is, again, a form of collection. On the other hand, K.S.A. § 21–3707 is a criminal statute and proceedings under it are criminal and cannot be stayed by § 362.

## III. *Analysis of the Conflict*

The issue of the relation between NFS check statutes and the bankruptcy laws is not a new one in Kansas or in the bankruptcy courts. In *In re Myers*, 119 Kan. 270, 237 P. 1026 (1925) the court in a declaratory judgment stated:

> *(T)he legal effect of . . . bankruptcy discharge would be that of payment . . . and the petitioner could rely on such discharge as equivalent of payment. . . . 119 Kan. at 275, 237 P. 1026.*

Under the then existing abatement statute, discharge of a debt in bankruptcy was the equivalent of payment and abatement of the criminal offense. *Id.*

In *State v. Breitenbach*, 190 Kan. 189, 373 P.2d 601 (1962) and *State v. Bontz*, 192 Kan. 158, 386 P.2d 201 (1963), the court overruled its holding in *In re Myers, supra,* and held:

> while the debt on the check is a <u>civil liability</u> and could be satisfied by a discharge in bankruptcy, the act of writing a worthless check creates a criminal liability and is not discharged by a proceeding in bankruptcy. *State v. Bontz*, 192 Kan. at 161, 386 P.2d 201.

*Bontz* relied heavily on *Kesler v. Dept. of Public Safety*, 369 U.S. 153, 82 S.Ct. 807, 7 L.Ed.2d 641 (1962), holding even if a statute and federal bankruptcy law conflicted, the *complicated demands of our federalism* dictated a state law was not pre-empted by the Bankruptcy Act if the state legislature did not intend, in enacting the statute, to circumvent the Federal law. *Id.* at 172, 82 S.Ct. at 818–19, 7 L.Ed.2d at 655. Justices Black and Douglas in *Kesler*, and Justice Schroeder in *Bontz*, and Breitenbach registered vigorous dissents, stating *the Constitution requires all such conflicts to be decided . . . by a simple application of the Su-*

*premacy Clause of the Federal Constitution, Id.* 184, 82 S.Ct. at 825, 7 L.Ed.2d at 661 (Black, J. and Douglas, J., dissenting); see *State v. Bontz,* 192 Kan. at 196–97, 386 P.2d 201 (Schroeder, J. dissenting).

*Kesler* was overruled in *Perez v. Campbell,* 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971), and thus the correctness of Kansas cases relying on *Kesler* must be questioned. In *Perez* the court held:

> *We can no longer adhere to the aberrational doctrine of Kesler . . . that state law may frustrate the operation of federal law as long as the state legislature in passing its law had some purpose in mind other than one of frustration.*
>
>     \*     \*     \*     \*     \*     \*
>
> *. . . (S)tate legislation which frustrates the full effectiveness of federal law is rendered invalid by the Supremacy Clause.*

*Id.* at 651–52, 91 S.Ct. at 1712–13, 29 L.Ed.2d at 243–44.

After *Perez,* many courts have been presented with conflicts between NSF check prosecutions and either the Bankruptcy Act or Code. In *In re Penny,* 414 F.Supp. 1113 (W.D.N.C.1976), the district court said:

> *(T)he effect of the* [worthless check] *proceeding is to put the bankrupt in the position of conflicting duties. On the one hand, the bankruptcy court will order him to pay only a fraction of the debt, if it is dischargeable. On the other hand,* the state court has ordered him to pay it all or go to jail.
>
> *This is exactly the situation Rule 401, and the underlying statutes, were designed to prevent. If the criminal action is allowed to proceed, the jurisdiction and judgments of the bankruptcy court will be wholly frustrated.*

*Id.* at 1115. Since *Penny,* several courts have construed *Penny* to say the underlying motives of the complainant creditor and county attorney must be examined, and if these motives are to satisfy the debt, then the criminal proceeding must be enjoined as an attempt to *enforce . . . by indirection a debt which cannot be enforced directly at* the State or Federal level. *In re Bray,* 12 B.R. 359, 363 (Bkrtcy.M.D.Ala.1981). See, *e. g., In re Reid,* 9 B.R. 830 (Bkrtcy.M.D. Ala.1981); *In re Lake,* 11 B.R. 202 (Bkrtcy. S.D.Ohio, 1981); *Kaping v. State,* 13 B.R. 621 (Bkrtcy.D.Or.1981); *In re James,* 10 B.R. 2 (Bkrtcy.W.D.N.C.1980); *In re Caldwell,* 5 B.R. 740 (Bkrtcy.W.D.Va.1980). The problem with this approach is the creditor's motives are almost always to satisfy the debt owed to them. See part I of this opinion. While there is language in *Penny* justifying an inquiry into motives, it appears the *Penny* court only mentioned the inquiry because of the unusual facts in that case, namely: the *prosecution in criminal court* was conducted by a lawyer *privately retained by the payee;* neither the district attorney nor the Attorney General appeared at the hearing on the motion to stay, but rather the State's interests were once again represented by the private lawyer; the debtor's prison sentence was suspended conditional on the debtor's payment of the debt. In light of these special facts, some of which could not occur under Kansas law, this Court feels *Penny* more properly stands for the proposition that state legislation *frustrating* the jurisdiction and judgments of the bankruptcy court are pre-empted under the Supremacy Clause and actions under such legislation must be restrained, *In re Penny, supra,* at 1115. This reading of *Penny* aligns it with *Perez v. Campbell* where the court said a state statute is pre-empted by the Bankruptcy Act if it frustrates or *stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. Perez v. Campbell,* 402 U.S. at 649, 91 S.Ct. at 1711, 29 L.Ed.2d at 242, quoting *Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581, 587 (1941) (Black, J.), and citing *Gibbons v. Ogden,* 9 Wheat 1, 211, 6 L.Ed. 23, 73 (1824) (Marshall, J.). Thus remaining for this Court is an inquiry into the specific areas of frustration and obstacles between the Kansas statute and the Bankruptcy Code instead of motives.

## IV. *Specific Areas of Conflict*

The Bankruptcy Code gives bankruptcy courts broad and pervasive jurisdiction to

hear and determine *all civil proceedings arising under or related to cases under title 11.* 28 U.S.C. § 1471. Congress granted this power to the bankruptcy courts under the enumerated power *To establish . . . uniform laws on the subject of bankruptcies throughout the United States*; U.S.Const. Art. I, Sec. 8. To the extent any Kansas cases may have held to the contrary while the Bankruptcy Act was in effect, and to the extent these Kansas cases relied on *Kesler v. Dept. of Public Safety, supra,* overruled, *Perez v. Campbell, supra,* they clearly conflict with and frustrate the purposes of the Bankruptcy Code.

The first specific area of conflict involves discharge of debts. Only one court can determine which debts of the instant nature are discharged in bankruptcy and Congress decided to create a federal bankruptcy court to make this determination. See, *e. g.,* 11 U.S.C. § 727(a); § 1328(a), (b). Once a federal bankruptcy court has determined a debt is discharged, the Bankruptcy Code prohibits actions to collect on that debt. 11 U.S.C. § 524(a)(2). For example, if restitution is ordered to be paid to a complainant creditor in a NSF check action, this is a civil remedy designed to satisfy the debt. See part I of this opinion. If a bankruptcy court discharges a debt, the Bankruptcy Code prohibits *any act to collect . . . any such debt,* 11 U.S.C. § 524(a)(2), and thus the civil remedy of restitution, even if arising out of a criminal proceeding, is prohibited. The creditor cannot request restitution or direct the county attorney to request it, and the county attorney cannot recommend it. The federal Bankruptcy Code, by virtue of the Constitution's Supremacy Clause, forbids it, and this Court can and will enjoin any such requests or recommendations. Though this Court cannot enjoin a Kansas state court from ordering restitution because a bankruptcy court does not have injunctive power against other courts, 28 U.S.C. § 1481, the federal law nevertheless protects a debtor from having to involuntarily satisfy a discharged debt. Any order to make restitution of a discharged debt would thus directly conflict and obstruct the purposes of the federal bankruptcy law, and would be void under the Supremacy Clause and the holding of *Perez v. Campbell, supra,* both of which bind all courts of this land.

The next area of conflict involves collection of debts. Under the Bankruptcy Code, the filing of a petition in bankruptcy stays civil collection activities, but not criminal proceedings. 11 U.S.C. § 362(a), (b)(1). It is clear to this Court, and there can be little argument, that the NFS check statute is a criminal statute. See, *e. g., State v. Bontz, supra,* 192 Kan. at 161, 386 P.2d 201. Prosecutions under this statute are criminal prosecutions and are not stayed by the Bankruptcy Code. § 362(b)(1). See *State v. Bontz, supra,* 192 Kan. at 161, 386 P.2d 201. As one federal court in the context of conflicts between the Bankruptcy Act and a state NFS check Act said:

> *The discretion of a federal court to interfere with an ongoing state criminal prosecution is severly limited by principles of federalism and comity.*

*In re Porter,* 462 F.Supp. 370, 372 (E.D.Ark. 1978); citing *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). A heavy burden of proof is required before a criminal prosecution can be enjoined, *Id.* 462 F.Supp. at 373, irreparable injury must be shown, and *(t)he mere prospect of facing criminal prosecution is not per se irreparable injury. Id.* at 372. Thus because the federal law does not prohibit a criminal proceeding, there is no obstacle to the accomplishment of the objectives of the Bankruptcy Code, and this Court, as a general rule, following *In re Porter* and *Younger v. Harris,* will not enjoin the prosecutor from commencing or continuing a criminal proceeding.

The next area of conflict is notice under K.S.A. § 21–3707 (1974). As pointed out in part I of this opinion, the Kansas NSF check statute provides the prosecutor with a powerful device. It establishes prima facie the necessary intent and knowledge required under the statute *after notice is sent to the debtor and if the debtor does not cure the bad check within 7 days of*

*receiving notice.* In essence then, the notice is a demand for the debtor to cure the NSF check by paying the debt caused by the NSF check, or face the consequences of criminal prosecution. If notice is sent and the time expires before a debtor files bankruptcy, there is no conflict with the Bankruptcy Code because there is no stay of collection activities until bankruptcy is filed. If, however, notice is sent after a petition in bankruptcy is filed or the 7 days expires after a petition is filed, this is clearly a form of civil collection, stayed by § 362(a). See *Harris v. State,* 378 So.2d 257 (Ct.Crim.App.Ala.1979). As the Court has previously noted, Kansas creditors can send this notice themselves, without aid of a county attorney. See *State v. Calhoun, supra.* Furthermore, no matter who sends the notice, the obvious purpose is to compel the debtor to cure the NSF check and satisfy a debt. This is a civil collection tool, authorized by a Kansas criminal statute, but which conflicts with the automatic stay provisions of the Bankruptcy Code and is therefore pre-empted and forbidden by virtue of the Supremacy Clause, and this Court will enjoin any attempts to send or realize on such a notice after a debtor has filed a petition in bankruptcy.

■ The results of the Court's holdings today can be summarized as follows: this Court cannot and will not enjoin the state district court from going forward with or presiding over a criminal proceeding; the civil remedy of restitution is not available as a remedy in NSF check prosecution after a debtor files a petition in bankruptcy court; notice pursuant to K.S.A. § 21–3707 cannot be sent to a debtor after a petition in bankruptcy court is filed; after a petition seeking an order for relief is filed, determination of dischargeability of the civil aspect for NSF must be made by a complaint and hearing solely in the bankruptcy court.

These holdings do not render the prosecutor nor the creditor helpless. The prosecutor can prosecute a criminal case against a debtor in a bankruptcy proceeding under K.S.A. § 21–3707 whether or not notice is sent to the debtor. Without notice, of course, the prosecutor must establish intent and knowledge without the benefit of a statutory presumption, but certainly notice is not an element of the crime. The creditor can always come into this Court and try the issue of dischargeability of a debt under § 523 of the Code. This was recognized and approved by now Chief Justice Schroeder of the Kansas Supreme Court in his dissent in *State v. Breitenbach, supra,* when he said the creditor is not left,

> *without an adequate remedy at law ... (T)he* [creditor] *could have made an appearance in the United States District Court in bankruptcy, and attempt to show that such debt was not, as a matter of law, a dischargeable debt.*

190 Kan. 197, 373 P.2d at 607 (Schroeder, J., dissenting). Thus the state can still exercise its Police Power, protect the welfare of Kansans and discourage the use of NSF checks through criminal prosecution under K.S.A. § 21–3707 (1974), and the creditor can protect itself by coming to the bankruptcy court to determine dischargeability *without running roughshod over immunities that the United States, acting through a specifically granted, exclusive power, has chosen to give its citizens. Kesler v. Dept. of Public Safety, supra,* 369 U.S. at 184, 82 S.Ct. at 825, 7 L.Ed.2d at 661 (Black, J. and Douglas, J. dissenting).

Finally, if it was ever shown to this Court that a prosecuting attorney was filing or threatening to file criminal charges against a debtor in a bankruptcy proceeding in an attempt to obtain payment for the creditor or coercing a debtor *not to file bankruptcy* until a debt is paid under the threat or "promise" of criminal prosecution, this Court would be inclined to seriously consider whether to enjoin and punish for contempt the criminal prosecution because the prosecution was in bad faith, improvidently brought, and harassment of a debtor within the holdings of *In Re Porter, supra* and *Younger v. Harris, supra.*

The requirements of existing in a system of federalism are complicated, *Kesler v. Dept. of Public Safety, supra,* at 172, 82

S.Ct. at 818, 819, 7 L.Ed.2d at 655, but certainly in this instance these requirements constitutionally can be satisfied while still harmoniously giving effect to the Supremacy Clause of the Constitution, the Bankruptcy Code and state criminal statutes born out of the state police power.

■■■ Turning now to the case at bar, in none of the charges was notice under K.S.A. § 21–3707 sent to the debtor *before* bankruptcy was filed. Notice on some of the checks, however, was sent to the debtor after bankruptcy was filed. In accordance with this opinion, notice under K.S.A. § 21–3707 is a civil collection attempt, is stayed by § 362(a) of the Code and of no effect by virtue of the Supremacy Clause. Because the notices sent were of no effect and void, the benefits of notice granted by K.S.A. § 21–3707 (establishing prima facie intent and knowledge) cannot inure to the prosecutor. Therefore, the Court finds the county attorney can criminally prosecute this debtor, but because notice was given in violation of a federal law, the county attorney should have to prove intent and knowledge under K.S.A. § 21–3707, and would have been enjoined from using a presumption necessarily prohibited by the Bankruptcy Code and the United States Constitution. Furthermore, because the county prosecutor can criminally prosecute the debtor, and because when he utilized the presumption of intent and knowledge triggered by notice in K.S.A. § 21–3707, he did not have notice a bankruptcy petition had been filed, he is not in violation of the automatic stay, and not in contempt. The Court, however, does find the prosecutor improvidently utilized the presumption and should apprise the trial court of the impermissible and improvident use of the presumption.

It has been brought to this Court's attention that if the debtor is found guilty, the county attorney plans to recommend restitution. In accordance with this opinion, the Court enjoins the county attorney from making such a recommendation or request, as such a recommendation or request if carried forward to an order would violate the Bankruptcy Code, be contrary to *Perez v. Campbell, supra,* and constitute an impermissible infringement on the Supremacy Clause.

■■■ Finally, this Court finds no impropriety, bad faith or harassment of the debtor in this prosecution, and thus will not enjoin the criminal prosecution.

The foregoing constitutes Findings of Fact and Conclusions of Law under Bankruptcy Rule 752 and Rule 52(a) of the Federal Rules of Civil Procedure.