**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Thomas William FRAZIER, Defendant-Appellant.**

**No. 31108.**

United States Court of Appeals, Fifth Circuit.

June 9, 1971.

---

[1]. See N.L.R.B. v. Amalgamated Clothing Workers of America, 5 Cir. 1970, 430 F.2d 966.

[1a]. Count One of the indictment charged a similar transaction respecting a similar check in the amount of $75. The record before us does not reveal whether this court was submitted to the jury or whether it went out by directed judgment or

Leroy Boling, Pensacola, Fla., court appointed, for defendant-appellant.

C. W. Eggart, Jr., Asst. U. S. Atty., William Stafford, U. S. Atty., Pensacola, Fla., for plaintiff-appellee.

Before GODBOLD, SIMPSON and CLARK, Circuit Judges.

SIMPSON, Circuit Judge:

The appellant is here seeking reversal of his judgment of conviction and sentence to three years imprisonment, to be served concurrently, on each of Counts 2, 3, 4, 5 and 6 [1a] of an indictment charging violations of Title 18, U.S.C., Section 7, Title 18, U.S.C., Section 13 and Section 832.05, Florida Statutes Annotated, arising from the uttering and passing during September 1969, of five true-name, insufficient fund checks, in amounts respectively of $100 (Count

acquittal, or whether the jury acquitted Frazier thereunder by silence. The Verdict found him guilty, as indicated under Counts 2, 3, 4, 5 and 6. The judgment and sentence tracked the verdict and imposed identical three year confinement terms to be served concurrently, subject to the early parole provisions of Title 18, U.S.C. Section 4208(a).

Two), $100 (Count Three), $75 (Count Four), $100 (Count Five) and $100 (Count Six), at Air Force Base Exchanges at Eglin Air Force Base and satellite air force installations within the special territorial jurisdiction of the United States. Title 18, U.S.C., Sections 7 and 13, supra. Although we find the evidence as to scienter, the "intent to defraud" meager indeed, we conclude that it meets the classic test of Glasser v. United States, (1941) 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680. When viewed in the light most favorable to the government the evidence presented was sufficient basis for the jury to arrive at a verdict of guilty. Accordingly, we affirm.

Thomas William Frazier retired from the United States Air Force with the rank and grade of Master Sergeant in December 1962. Until shortly before Labor Day, September 1, 1969, he lived at Lutz, Florida, a small agricultural community near Tampa, Florida.[2] Frazier maintained a checking account with the First State Bank of Lutz. He was engaged in a one man furniture refinishing and repair business.

In September of 1969, Frazier moved to Fort Walton Beach, Florida, several hundred miles from Lutz and adjacent to another U.S. Air Force establishment, Eglin AFB. He planned to resume operation of his furniture repair business, and took immediate steps to accomplish this purpose. Most of Frazier's furniture refinishing business came from Air Force contacts at Mac Dill AFB and Eglin Field. He solicited and handled refinishing business generated when servicemen are transferred from one post to another by either government or private transport and find their household effects on arrival to be damaged and in need of repair, refurbishing, or both. Business was referred to Frazier by

Base officials, including the staff judge advocate, who would usually be in contact with servicemen having damage claims. The gross receipts of this business were usually about $800.00 or more monthly, according to Frazier. The net was said to be considerably less, but was not put in figures.

His expected time of payment was difficult to estimate since it usually was dependent upon successful processing of damage claims by his service clientele.

Frazier's Air Force retirement pay was approximately $250.00 monthly, received about the end of each calendar month. When he left Lutz he asked a sister-in-law and her husband to handle at least some banking operations for him, the exact extent of which remained unclear after both they and Frazier testified. It is clear that one or both these parties were requested to intercept in the mails and deposit to his Lutz bank account a retirement check, which, as noted above was said to be in the amount of about $250.00. It is not clear whether they (or either of them) received further instructions as to additional checks from furniture repair customers which might turn up in the mails. Frazier testified he thought that he left Lutz with about four or five hundred dollars owing to him, expected it to come in shortly, and told one or both relatives to deposit any check coming in. He left four deposit slips with someone. He maintained that when he wrote and passed the checks described below, he believed there were sufficient funds in his bank account to cover them. Both the in-laws, a couple named Calliea, and a Lutz neighbor and friend, Allene Gonzalez, gave some testimony as to instructions received from Frazier with respect to depositing checks, the net effect of which was to cast considerable doubt on Frazier's testimony,[3] both as to

2. Tampa is the location of Mac Dill Air Force Base, a sizable U. S. Air Force permanent installation.

3. The appellant's trial testimony corresponded fairly closely with a full state-

ment made to a Special Agent of the F.B.I., Michael Dill, on November 17, 1969, prior to Frazier's being arrested in this case.

the instructions given and also as to his reasonable expectation of any checks, other than the retirement check soon after Labor Day. Calliea said no other check was mentioned; that he and Frazier were in the furniture repair business together prior to Frazier's leaving Lutz; and that as far as he knew Frazier was not then owed any remaining substantial sums for repair work. He said Frazier's incoming mail was forwarded unopened to Fort Walton Beach. Mrs. Calliea recalled instructions only as to the retirement check, as did Mrs. Gonzalez, who made the actual deposit after picking up the check at the Calliea residence, a few days after Labor Day. Mrs. Gonzalez said this was done at Frazier's request because she had a car and Mrs. Calliea did not.

When he reached Fort Walton Beach, during September 1969, Sergeant Frazier cashed six checks for $75 or $100 each, all drawn against his Lutz Bank account, at the two Base Exchanges, at Eglin Air Force Base and at Hurlburt Field, a satellite installation. The total was $550.00. All were dishonored by the Lutz Bank. Sergeant Frazier said he was told that the limit as to cashing checks at the several Post Exchanges was $100 per day, and that since he needed more than $500 [4] he had to cash six separate checks, rather than a single check for the amount needed. The net result was that Frazier was indicted for six separate offenses under the Florida bad check law, rather than a single charge.

The Florida Statute, Section 832.05(2) [5], under which Frazier was charged, reads:

*Ch. 832* WORTHLESS CHECKS AND DRAFTS

§ 832.05

*(2) Worthless checks; penalty*

(a) It shall be unlawful for any person, firm or corporation to draw, make, utter, issue or deliver to another any check, draft, or other written order on any bank or depository for the payment of money or its equivalent, knowing at the time of the drawing, making, uttering, issuing or delivering such check or draft that the maker or drawer thereof has not sufficient funds on deposit in or credit with such bank or depository with which to pay the same on presentation; provided, that this section shall not apply to any check where the payee or holder knows or has been expressly notified prior to the drawing or uttering of same or has reason to believe that the drawer did not have on deposit or to his credit with the drawee sufficient funds to insure payment as aforesaid, nor shall this section apply to any post dated check.

(b) Violation of the provisions of this subsection shall constitute a misdemeanor and shall be punishable by imprisonment in the county jail not exceeding six months or by fine not exceeding $300.00, unless the check, draft or other written order drawn, made, uttered, issued or delivered be in the amount of fifty dollars or its

---

4. Frazier testified he was required to make a rent deposit of $160, a deposit for electricity of $50, a deposit for gas of $35, a deposit for water of $20, and that the balance of the $550 was needed for moving expense and for buying equipment and supplies to set up again in the furniture repair business.

5. Subsection (1) of Section 832.05 states the legislative purpose of the Florida Legislature in adopting the statute in the following language:

   *832.05 Knowingly making, issuing, etc., worthless checks, drafts; obtaining*

*property in return for worthless checks, etc.; penalty; duty of drawee; evidence*

(1) Purpose.—The purpose of this section is to remedy the evil of giving checks, drafts, bills of exchange and other orders on a bank without first providing funds in or credit with the depository on which the same are made or drawn to pay and satisfy the same, which tends to create the circulation of worthless checks, drafts, bills of exchange and other orders on banks, bad banking, check kiting and a mischief to trade and commerce.

equivalent, or more and the payee or a subsequent holder thereof receives something of value therefor. In that event the violation shall constitute a felony and shall be punishable by imprisonment in the state penitentiary not exceeding five years, or in the county jail not exceeding twelve months, or by fine not exceeding $1,000.00.

■ It is of course manifest from the very language [6] of Title 18, U.S.C., Section 7, that we must look to the Florida jurisprudence to learn what conduct is punishable under the offense denounced by the statute. The Florida Supreme Court has made it clear that "intent to defraud" is an indispensable element in proving violation of Section 832.05(2), F.S.A. Ennis v. State, Fla.1957, 95 So.2d 20. The holding of *Ennis* is that if "in-

tent to defraud" is not a necessary element of the statutory offense, 832.05(2) would be unconstitutional as providing for imprisonment for debt without fraud contrary to Section 16 of the Declaration of Rights in the Florida Constitution.[7] Cf. Snyder v. State, Fla. App.1967, 196 So.2d 217.

Although Florida's courts have never had occasion to define the "intent to defraud" required in offenses prosecuted under this precise statute, we think we are on safe ground in adopting for our purposes here a definition of "intent to defraud" found in Florida decisions under a fairly closely related statute, F.S. A., Section 811.021, which defines as a part of the statutory offense of larceny, the offense of obtaining money under false pretenses.[8] In Green v. State, Fla.App.1966, 190 So.2d 614, 616, it is

---

6. Title 18, U.S.C., Section 13, provides:
   *Laws of states adopted for areas within federal jurisdiction*

   Whoever within or upon any of the places now existing or hereafter reserved or acquired as provided in section 7 of this title, is guilty of any act or omission which, although not made punishable by any enactment of Congress, would be punishable if committed or omitted within the jurisdiction of the State, Territory, Possession, or District in which such place is situated, by the laws thereof in force at the time of such act or omission, shall be guilty of a like offense and subject to a like punishment.

7. The reported case deals with the Florida Constitution of 1885, but the provision of Section 16 of the Declaration of Rights was carried forward unchanged as Section 11 in the Florida Constitution of 1968, which became effective January 7, 1969, and was hence in force when Frazier's offenses took place. The complete text of Section 11 (formerly Section 16) is: "No person shall be imprisoned for debt, except in cases of fraud."

8. Section 811.021, F.S.A., as last amended by Laws 1969, c. 69–65, § 1, effective July 1, 1969, reads in pertinent part:
   811.021 *Larceny defined; penalties; sufficiency of indictment, information or warrant*

   (1) A person who, with intent to deprive or defraud the true owner of his property or of the use and benefit thereof, or to appropriate the same to the

use of the taker, or of any other person:

   (a) Takes from the possession of the true owner, or of any other person; *or obtains from such person possession by color or aid of fraudulent or false representations or pretense, of any false token or writing;* or obtains the signature of any person to a written instrument, the false making whereof would be punishable as forgery; or secretes, withholds, or appropriates to his own use, or that of any person other than the true owner, any money, personal property, goods and chattels, thing in action, evidence of debt, contract, or property, or article of value of any kind; or

   (b) * * *

   (c) * * *, steals such property, and is guilty of larceny.

   (2) If the property stolen is of the value of one hundred dollars ($100.00) or more, or if, as part of a common scheme or design to defraud, property of the aggregate value of two hundred dollars ($200.00) or more is taken in any twelve (12) consecutive month period by an agent, servant or employee, from his principal or employer by a series or combination of any of the acts denounced in this section, the offender shall be deemed guilty of grand larceny and upon conviction thereof shall be punished by imprisonment in the state penitentiary for a period not exceeding five (5) years, or in the county jail for a period not ex-

held with reference to the offense of obtaining money by false pretense portion of F.S.A. Section 811.021:

"\* \* \* the intent to defraud in connection with this crime has been stated to be 'the intent to induce another to part with his property by the use of false and deceptive means, when otherwise the owner would not have done so.' "3

"3.  2 Burdick, The Law of Crime, § 649 at 508 (1946); Rosengarten v. State, supra, note 1."

(The fall citation to Rosengarten v. State is: Fla.App.1965, 171 So.2d 591.) To similar effect, see also Youngker v. State, Fla.App.1968, 215 So.2d 318, 324.

Frazier argues that intent to defraud on his part is completely negated by: firstly, his self-asserted and stoutly maintained belief that the checks in question would be good upon presentation; secondly, his arrangements as he understood them with his in-laws and Mrs. Gonzalez to make timely deposits to his account; thirdly, because he made complete restitution, partly by deductions from his retirement benefits, between the time he was charged and the date of trial; fourthly and most importantly, by his situation as a retired Air Force enlisted man, entitled to draw retirement pay monthly for the balance of his life. In connection with the last contention he urges that it would be inconceivable for him seriously to intend to defraud the United States, when as a practical matter he expected to draw retirement benefits from the United States for the indefinite future. He says these funds could be impounded for collection of his true-name checks at any time.

The argument appears to us to be formidable and persuasive that motion for judgment of acquittal should have been granted by the trial judge, either at the close of the government's case, or certainly at the close of all the evidence, when his own testimony was before the jury and trial judge.

The counter argument of the appellee is (1) that Frazier could have had no reasonable expectation that the September 1 retirement check [9] would cover more than a small portion of the checks written by him; (2) that he did not demonstrate other than by his own self-serving testimony largely discredited by his relatives the Callieas and Mrs. Gonzalez, that he expected other funds to be deposited in the First State Bank of Lutz; (3) that deductions were already

ceeding twelve (12) months, or by fine not exceeding one thousand dollars ($1,000.00).

(3) If the value of the property stolen as mentioned in the preceding subsection is less than one hundred dollars ($100.00) the offender shall be deemed guilty of petit larceny and upon conviction shall be punished by imprisonment in the county jail for a period not exceeding six (6) months or by fine not exceeding three hundred dollars ($300.00).

(4) Hereafter it shall not be a defense to a prosecution for larceny, or for an attempt or for conspiracy to commit the same, or for being accessory thereto, that the purpose for which the owner was induced by color of aid of fraudulent or false representation or pretense, or of any false token or writing, to part with his property or the possession thereof, was illegal, immoral or unworthy.

(5) It shall be sufficient for any indictment, information or warrant returned, filed or issued under this section to charge generally that the defendant at the time and in the county specified, did steal the personal property, thing in action, evidence of debt or contract or article of value out of which the prosecution arose, describing the same in general terms and alleging generally the ownership and value thereof. This section shall not be construed as intending to interfere with the power of the court to require the state to furnish the defendant with a bill of particulars in proper cases and on sufficient showing that cause exists for the same.

(6) \* \* \*.  (Emphasis supplied)

9.  The retirement check was in the amount only of $199 and a few cents, the amount being reduced by about fifty dollars at Frazier's prior request in order to pay off an earlier dishonored check or checks cashed at a Mac Dill AFB Exchange.

being made from Frazier's monthly retirement checks at his direction, as he knew, and that he hoped to get away with the Eglin AFB check cashing spree in similar fashion; and (4) and lastly that matters relating to state of mind are classically matters for binding decision by the jury under all the circumstances surrounding the transaction, and not for de novo reconsideration and re-evaluation by appellate judges.[10]

■ The point is, to our minds, extremely close, but we cannot conclude that appellant has succeeded in demonstrating error in the refusal of the trial judge, who saw and heard the witnesses, to direct judgment of acquittal. The evidence, viewed in the light most favorable to the government, *Glasser,* supra, and other cases cited, though close to the line between sufficient evidence to go to the jury and insufficient evidence for that purpose, falls within the scope of permissible submission to the jury. This reasoning leads us to conclude that affirmance is in order.

From our review of the written record before this Court, the sentence meted out for what was essentially a single offense seems severe. However, it is within the applicable statute's limits and therefore was a matter committed to the trial judge's unfettered discretion. The appellant has a right within 120 days of the time our mandate goes down to move the trial court under Rule 35, F.R.Crim. P., for a reduction of his sentence. We are confident that if such a motion is made it will be given appropriate and careful consideration by that court.

Affirmed.

---

10. The government cites such cases as Riggs v. United States, 5 Cir. 1960, 280 F.2d 949, to demonstrate that the Court of Appeals on review cannot retry the case or simply substitute its judgment as to guilt or innocence for that of a jury, their function being simply to find whether, taking the view most favorable to the government, there is substantial support in the evidence for the jury's verdict, Glasser v. United States, supra, and numerous cases with similar holdings including: Campbell v. United States, 5 Cir. 1961, 291 F.2d 401; Greenhill v. United States, 5 Cir. 1962, 298 F.2d 405; Strauss v. United States, 5 Cir. 1963, 311 F.2d 926; Mount v. United States, 5 Cir. 1964, 333 F.2d 39; Knapp v. United States, 5 Cir. 1962, 311 F.2d 71, and Newsom v. United States, 5 Cir. 1962, 311 F.2d 74.